UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In Re:                                    Chapter 11 BKY 11-41376-NCD

Douglas W. Schmidt and                    State Court File No.86-CV-11-856
Kelly A. Schmidt
                        Debtors,

---

Douglas W. Schmidt,

                        Plaintiff

v.

                                          Adversary Case No._____
KleinBank,

                        Defendant.

---

NOTICE OF REMOVAL TO
UNITED STATES BANKRUPTCY COURT
PURSUANT 28 U.S.C. § 1452

---

**PLEASE TAKE NOTICE** that Defendant Douglas W. Schmit, David L. Schmidt, and

F.H. Schmidt, Inc. will remove the above-captioned matter pursuant to 28 U.S.C. § 1452 to

United States Bankruptcy Court for the District of Minnesota. The grounds for such removal to

United States District Court include:

1. Defendants David L. Schmidt and Douglas W. Schmidt are Chapter 11 Bankruptcy

   Debtors in Bankruptcy Case Numbers BKY-11-41378-NCD, and BKY-11-41376-

   NCD, respectively, filed on February 28, 2011 in United States Bankruptcy Court in

   the District of Minnesota.

2. The above-captioned concerns the disposition of collateral in which each of the

   Chapter 11 Bankruptcy Debtors have a legal interest, and is therefore a core

proceeding and cannot be resolved without affecting the Bankruptcy Estate in each of the above-named Chapter 11 Bankruptcy cases.

3. Because the above-captioned matter is related to the above-mentioned Chapter 11 Bankruptcy cases, it will be more efficiently and expeditiously heard in United States Bankruptcy Court in the District of Minnesota.

4. The United States District Court for the District of Minnesota has original jurisdiction of this case under 28 U.S.C. § 1334.

Pursuant to 28 U.S.C. § 1446(a), this Notice of Removal has been filed in both Wright County District Court, in which the action was first commenced, and in United States Bankruptcy Court for the District of Minnesota, to which this action is being removed, along with a copy of all process, pleadings, and orders served upon Defendants in the above-captioned matter. Written notice of this Notice for Removal has been given to the Plaintiff in this matter pursuant to 28 U.S.C. § 1146(d).

Date: 3 / 9 / 11

By: _____

Ronan Blaschko, Atty ID # 351337
Blaschko & Associates Law Firm, PLLC
1551 Livingston Avenue, Suite 103
Saint Paul, MN 55118
Phn: (651) 204-7152
Fax: (651) 305-6753
Ronan@blaschkolaw.com

STATE OF MINNESOTA

COUNTY OF WRIGHT

DISTRICT COURT

TENTH JUDICIAL DISTRICT

CASE TYPE:  CONTRACT

KleinBank,

Court File No._____

Plaintiff,

vs.

**SUMMONS**

F.H. Schmidt, Inc., David L. Schmidt, Douglas
W. Schmidt, Schmidt Land Co., Schmidt
Builders of Buffalo, Inc., and Schmidt
Development Corporation,

Defendants.

THIS SUMMONS IS DIRECTED TO: **DEFENDANTS ABOVE-NAMED.**

**1. YOU ARE BEING SUED.** This Plaintiff has started a lawsuit against you.  The
Plaintiff's Complaint against you is attached to this summons.  Do not throw these papers away.
They are official papers that affect your rights.  You must respond to this lawsuit even though it
may not yet be filed with the Court and there may be no court file number on this summons.

**2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.**  You
must give or mail to the person who signed this summons **a written response** called an Answer
within 20 days of the date on which you received this Summons.  You must send a copy of your
Answer to the person who signed this summons located at:

BARNA, GUZY & STEFFEN, LTD.
400 Northtown Financial Plaza
200 Coon Rapids Blvd.
Minneapolis, MN  55433

**3. YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response
to the Plaintiff's Complaint.  In your Answer you must state whether you agree or disagree with
each paragraph of the Complaint. If you believe the Plaintiff should not be given everything
asked for in the Complaint, you must say so in your Answer.

**4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN
RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS
SUMMONS.** If you do not answer within 20 days, you will lose this case.  You will not get to
tell your side of the story, and the Court may decide against you and award the Plaintiff

DISTRICT COURT

TENTH JUDICIAL DISTRICT
Case Type: Contract

---

KleinBank,

Court File No. _____

      Plaintiff,

v.

COMPLAINT

F.H. Schmidt, Inc., David L. Schmidt,
Douglas W. Schmidt, Schmidt Land Co.,
Schmidt Builders of Buffalo, Inc., and
Schmidt Development Corporation,

      Defendants.

---

Plaintiff KleinBank ("Plaintiff"), for its claims against Defendants F.H. Schmidt, Inc.,

David L. Schmidt, Douglas W. Schmidt, Schmidt Land Co., Schmidt Builders of Buffalo, Inc.,

and Schmidt Development Corporation ("Defendants"), states and alleges as follows:

1.    THE PARTIES:

   1.1.    Plaintiff KleinBank is a state bank with offices located at 1550 Audubon Road,

Chaska, Minnesota 55318.

   1.2.    Defendant F.H. Schmidt, Inc. ("F.H. Schmidt") is a Minnesota corporation with

offices located at 109 Highway 55 West, Buffalo, Minnesota 55313.

   1.3.    Defendant Schmidt Development Corporation ("Schmidt Development") is a

Minnesota corporation with offices located at 109 Highway 55 West, Buffalo, Minnesota 55313.

   1.4.    Defendant Schmidt Builders of Buffalo, Inc. ("Schmidt Builders") is a Minnesota

corporation with offices located at 109 Highway 55 West, Buffalo, Minnesota 55313.

   1.5.    Defendant Schmidt Land Co. ("Schmidt Land") is a Minnesota corporation with

offices located at 109 Highway 55 West, Buffalo, Minnesota 55313.

1.6.    Defendants Douglas W. Schmidt is an individual residing at 5951 – 23rd Street N.E., Buffalo, Minnesota 55313.

1.7.    Defendants David L. Schmidt is an individual residing at 5955 – 23rd Street N.E., Buffalo, Minnesota 55313.

2.    DOCUMENTS REGARDING LOAN NO. 1034554:

2.1.    On or about May 9, 2004, Defendant F.H. Schmidt executed a Promissory Note (Commercial – Revolving Draw) ("Promissory Note") to Plaintiff in the amount of $100,000. Attached hereto as **Exhibit 1** is a true and correct copy of the Promissory Note.

2.2.    The Promissory Note is secured by guaranties executed by Defendants Douglas W. Schmidt and David L. Schmidt in favor of Plaintiff.

2.3.    On or about June 2, 2004, Douglas W. Schmidt executed a Guaranty for the benefit of Plaintiff. Attached hereto as **Exhibit 2** is a true and correct copy of the Douglas W. Schmidt Guaranty.

2.4.    On or about June 2, 2004, David L. Schmidt executed a Guaranty for the benefit of Plaintiff. Attached hereto as **Exhibit 3** is a true and correct copy of the David L. Schmidt Guaranty.

2.5.    On or about August 10, 2007, Defendant F.H. Schmidt executed a Commercial Loan Agreement in favor of Plaintiff in the amount of $100,000. Attached hereto as **Exhibit 4** is a true and correct copy of the Commercial Loan Agreement.

2.6.    On or about August 10, 2007, as security for the $100,000 Commercial Loan Agreement, Defendant F.H. Schmidt executed a Security Agreement. A true and correct copy of the Security Agreement is attached hereto as **Exhibit 5**.

2.7.     Defendant F.H. Schmidt filed a UCC financing statement covering all inventory, equipment, accounts and other rights to payment, and general intangibles.  A true and correct copy of the UCC Financing Statement is attached hereto as **Exhibit 6**.

2.8.     On or about July 22, 2008, Defendant F.H. Schmidt executed a Promissory Note (Commercial – Revolving Draw) Renewal Note ("Promissory Note Renewal") to Plaintiff in the amount of $100,000.  The Promissory Note had been renewed several times before the July 22, 2008 renewal.  Attached hereto as **Exhibit 7** is a true and correct copy of the Promissory Note Renewal.

2.9.     The Promissory Note Renewal is secured by guaranties executed by Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development in favor of Plaintiff.

2.10.    On or about July 22, 2008, Douglas W. Schmidt executed a Guaranty for the benefit of Plaintiff.  Attached hereto as **Exhibit 8** is a true and correct copy of the Douglas W. Schmidt Guaranty.

2.11.    On or about July 22, 2008, David L.  Schmidt executed a Guaranty for the benefit of Plaintiff.  Attached hereto as **Exhibit 9** is a true and correct copy of the David L. Schmidt Guaranty.

2.12.    On or about July 22, 2008, Schmidt Land executed a Guaranty for the benefit of Plaintiff.  Attached hereto as **Exhibit 10** is a true and correct copy of the Schmidt Land Guaranty.

2.13.    On or about July 22, 2008, Schmidt Builders executed a Guaranty for the benefit of Plaintiff.  Attached hereto as **Exhibit 11** is a true and correct copy of the Schmidt Builders Guaranty.

2.14. On or about July 22, 2008, Schmidt Development executed a Guaranty for the benefit of Plaintiff. Attached hereto as **Exhibit 12** is a true and correct copy of the Schmidt Development Guaranty.

2.15. Under the terms of the Promissory Note, as amended, Defendant F.H. Schmidt agreed to pay Plaintiff the full principal amount of $100,000, plus interest from the date of disbursement on the unpaid outstanding principal balance. Specifically, Defendant F.H. Schmidt agreed to make monthly payments of all accrued interest on the balance outstanding, beginning on September 1, 2008. A final payment of the entire outstanding balance of principal and interest was due on August 1, 2009.

3. DEFAULT ON LOAN NO. 1034554:

3.1. On November 29, 2010, Plaintiff issued a letter to Defendant F.H. Schmidt giving it notice of default on the Promissory Note, as amended, and giving Defendant F.H. Schmidt notice that failure to pay the outstanding principal balance, interest and late fees due and owing under the Promissory Note, as amended, may result in commencement of legal action by Plaintiff, including, but not limited to, foreclosure of its security agreement and enforcement of the guaranties. Attached hereto as **Exhibit 13** is a true and correct copy of the November 29, 2010 letter to Defendant F.H. Schmidt.

3.2. On November 29, 2010, Plaintiff issued letters to Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development informing them that Defendant F.H. Schmidt defaulted under the Promissory Note, as amended, and giving each of the Defendant Guarantors notice that failure to cure the default pursuant to the terms of the Guaranty may result in enforcement of the Guaranty. Attached hereto as **Exhibit 14** is a true and correct copy of the November 29, 2010 letter to Defendant Guarantors.

3.3.     Despite due demand, Defendant F.H. Schmidt has failed and refused to pay the amount owing on the Promissory Note, as amended, to Plaintiff.

3.4.     Despite due demand, Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development have failed and refused to cure Defendant F.H. Schmidt's default pursuant to the terms of the Guaranties.

3.5.     The amount owing on the Promissory Note, as amended, as of November 29, 2010 was $107,524.98, which included interest and late fees. The per diem interest on the outstanding balance is $14.58.

3.6     Plaintiff is entitled to its costs of collecting the notes, including reasonable attorneys' fees under the Promissory Note, as amended.

3.7     Plaintiff has and will incur attorneys' fees and costs in collecting on the Promissory Note Renewal.

COUNT I

4.     BREACH OF THE PROMISSORY NOTE, AS AMENDED:

4.1.     The allegations of paragraphs 1 through 3 are incorporated herein by reference as if set forth fully herein.

4.2.     Defendant F.H. Schmidt entered into the Promissory Note, as amended, with Plaintiff.

4.3.     Defendant F.H. Schmidt breached the terms of the Promissory Note, as amended.

4.4.     As a direct and proximate cause of Defendant F.H. Schmidt's breach of the Promissory Note, as amended, Plaintiff has been damaged in an amount of $107,524.98, plus interest and late fees.

4.5.     Pursuant to the terms of the Promissory Note, as amended, Plaintiff is entitled to

an award of all reasonable attorneys' fees and legal expense incurred in collecting on the
Promissory Note, as amended.

COUNT II

5.    BREACH OF GUARANTY:

   5.1.    Plaintiff realleges the matters set forth above in Paragraphs 1 through 4.

   5.2.    Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt
Builders, and Schmidt Development entered into Guaranties with Plaintiff wherein they
guaranteed the payment of the Promissory Note, as amended.

   5.3.    Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt
Builders, and Schmidt Development have breached the terms of the Guaranties.

   5.4.    As a result of Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land,
Schmidt Builders, and Schmidt Development's breach of the Guaranties, Plaintiff has been
damaged in an amount of $107,524.98, plus interest and late fee, to be determined with greater
certainty at the time of trial.

COUNT III

6.    BREACH OF SECURITY AGREEMENT:

   6.1.    Plaintiff realleges the matters set forth above in Paragraphs 1 through 5.

   6.2.    Defendant F.H. Schmidt is in breach of the security agreement for failing to pay
its obligations to Plaintiff when due.

   6.3.    Plaintiff's security interest as described in Exhibits 5 and 6 has been perfected by
the filing of a UCC Financing Statement with the Secretary of State for the State of Minnesota.
Plaintiff has a first security interest in all inventory, equipment, accounts and other rights to
payment, and general intangibles.

6.4.    Pursuant to the Security Agreement and Minn. Stat. § 336.9-608-610, upon a default, Plaintiff may take possession of the collateral, with or without judicial process, and may sell the collateral, and apply the proceeds of said sale to Defendant F.H. Schmidt's indebtedness to Plaintiff.

6.5.    Plaintiff is entitled to an Order granting Plaintiff possession of the collateral, or in the alternative, to an Order directing the Sheriff to seize the collateral and to sell the same with the proceeds applied to the indebtedness.

COUNT IV

7.    REPLEVIN:

7.1.    Plaintiff realleges the matters set forth above in Paragraphs 1 through 5.

7.2.    The security interest described in Paragraph 2 has been perfected by the filing of a UCC Financing Statement with the Minnesota Secretary of State.

7.3.    Plaintiff is entitled to take possession of and sell the collateral, and apply the proceeds of said sale to Defendant F.H. Schmidt's indebtedness to Plaintiff.

7.4.    Plaintiff is entitled to an Order requiring that Defendant F.H. Schmidt immediately turn over collateral to Plaintiff, or in the alternative, to an Order directing the Sheriff to seize the collateral and to sell the same with the proceeds applied to the indebtedness.

**WHEREFORE**, Plaintiff pray the Court:

1.    For an Order finding that Plaintiff has a first lien on the collateral described in Exhibits 5 and 6 to the Complaint and an Order finding Plaintiff is entitled to possession and sale of the collateral.

2.    For judgment in an amount of $107,524.98, plus interest and late fee, to be determined with greater certainty at the time of trial against Defendant F.H. Schmidt for breach

of the Promissory Note, as amended.

3. Judgment against Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development for any deficiency in accordance with each Guaranty.

4. For an award of costs, disbursements and reasonable attorneys' fees against Defendants F.H. Schmidt, Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development as may be allowed by law.

5. For such other and further relief as the Court deems just and equitable.

Dated: _____ 2/7/11 _____                     BARNA, GUZY & STEFFEN LTD.

                                        By: _____
                                              Bradley A. Kletscher, #239355
                                              Tammy J. Schemmel, #0339325
                                              200 Coon Rapids Boulevard
                                              400 Northtown Financial Plaza
                                              Minneapolis, MN 55433
                                              (763)780-8500
                                              Attorneys for Plaintiff KleinBank

## ACKNOWLEDGEMENT

The undersigned acknowledges pursuant to Minn. Stat. § 549.211 that costs, disbursements and reasonable attorneys' fees may be awarded against the party who asserts this pleading if the pleading is asserted without a good faith basis.

Dated: _____ 2/7/11 _____                     BARNA, GUZY & STEFFEN LTD.

                                        By: _____
                                              Bradley A. Kletscher, #239355

8

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 1034554 | F H SCHMIDT INC | 0000301914 | 05/09/04 | RLH |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $100,000.00 | Wall Street Journal Prime plus 1.000% | 5.0% | 05/09/05 | Commercial |

Creditor Use Only

## PROMISSORY NOTE
(Commercial - Revolving Draw - Variable Rate)
### RENEWAL NOTE

**DATE AND PARTIES.** The date of this Promissory Note (Note) is May 9, 2004. The parties and their addresses are:

**LENDER:**
THE OAKLEY NATIONAL BANK OF BUFFALO
910 COMMERCIAL DRIVE
PO BOX 40
BUFFALO, Minnesota 55313
Telephone: (763) 682-1142

**BORROWER:**
F H SCHMIDT INC
a Corporation
109 Highway 55 West
BUFFALO, Minnesota 55313-4217



EXHIBIT
1

1. **DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

E. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

2. **RENEWAL.** This Note is a renewal of the following described note:

| Note Date | Note Number | Note Amount |
|---|---|---|
| May 9, 2003 | # 1033144 | $100,000.00 |

I have requested that the note listed in the table above be renewed. The remaining balance of the note listed in the table above is $96,500.00.

3. **PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum outstanding principal balance of **$100,000.00 (Principal)**, plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note matures or this obligation is accelerated.

I may borrow up to the Principal amount more than one time.

4. **ADVANCES.** Advances under this Note are made according to the following terms and conditions.

A. **Requests for Advances.** My requests are a warranty that I am in compliance with all the Loan documents. When required by you for a particular method of advance, my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents, and instruments that you require for the Loan. Any payment by you of any check, share draft or other charge may, at your option, constitute an advance on the Loan to me. All advances will be made in United States dollars. I will indemnify you and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine. To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized or this person's signature is not genuine.

I or anyone I authorize to act on my behalf may request advances by the following methods.

B. **Advance Limitations.** In addition to any other Loan conditions, requests for, and access to, advances are subject to the following limitations.

(1) **Obligatory Advances.** You will make all Loan advances subject to this Agreement's terms and conditions.

(2) **Advance Amount.** Subject to the terms and conditions contained in this Note, advances will be made in exactly the amount I request.

(3) **Disbursement of Advances.** On my fulfillment of this Note's terms and conditions, you will disburse the advance in any manner as you and I agree.

(4) **Credit Limit.** I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit. You may, at your option, grant such a request without obligating yourselves to do so in the future.

F H SCHMIDT INC
Minnesota Promissory Note
MN/4XXXJoriL00725200004364008062504N
©1996 Bankers Systems, Inc., St. Cloud, MN Exßerß
Initials ___
Page 1

(5) **Records.** Your records will be conclusive evidence as to the amount of advances, the Loan's unpaid principal balances and the accrued interest.

**5. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 5.0 percent (Interest Rate) until May 10, 2004, after which time it may change as described in the Variable Rate subsection.

**A. Interest After Default.** If you declare a default under the terms of this Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the outstanding Principal balance at the Interest Rate in effect from time to time under the terms of this Loan, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note or obligation will be limited to the Maximum Lawful Amount of interest allowed by state or federal law. Amounts collected in excess of the Maximum Lawful Amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.**

**D. Accrual.** During the scheduled term of this Loan interest accrues using an Actual/360 days counting method.

**E. Variable Rate.** The Interest Rate may change during the term of this transaction.

(1) **Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the highest base rate on corporate loans posted by at least 75% of the nation's 30 largest banks that The Wall Street Journal publishes as the Prime Rate.

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) **Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change May 10, 2004 and daily thereafter.

(3) **Calculation Of Change.** On each Change Date, you will calculate the Interest Rate, which will be the Current Index plus 1.000 percent. The result of this calculation will be rounded up to the nearest .125 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) **Effect Of Variable Rate.** A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**6. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $5.72, whichever is greater. However, this charge will not be greater than $50.00. I will pay this late charge promptly but only once for each late payment.

**7. PAYMENT.** I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning June 9, 2004, then on the same day of each month thereafter. Any payment scheduled for a date falling beyond the last day of the month, will be due on the last day. A final payment of the entire unpaid outstanding balance of Principal and interest will be due May 9, 2005.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Interest payments will be applied first to any charges I owe other than late charges, then to accrued, but unpaid interest, then to late charges. Principal payments will be applied first to the outstanding Principal balance, then to any late charges. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan under the following terms and conditions. THE LOAN MAY BE PREPAID IN FULL OR IN PART AT ANY TIME WITHOUT PENALTY. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is WORKING CAPITAL.

**10. SECURITY.** This Loan is secured by previously executed, separate security instruments.

**11. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** I make an assignment for the benefit of creditors or become insolvent, either because my liabilities exceed my assets or I am unable to pay my debts as they become due; or I petition for protection under federal, state or local bankruptcy, insolvency or debtor relief laws, or am the subject of a petition or action under such laws and fail to have the petition or action dismissed within a reasonable period of time not to exceed 60 days.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**E. Other Documents.** A default occurs under the terms of any other transaction document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** The value of the Property declines or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You reasonably believe that you are insecure.

**12. ASSUMPTIONS.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, or transfer of the Property. However, I may sell or similarly dispose of any Property that is inventory.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

    **A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

        **(1)** You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

        **(2)** You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

        **(3)** You may release, substitute or impair any Property securing this Note.

        **(4)** You, or any institution participating in this Note, may invoke your right of set-off.

        **(5)** You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

        **(6)** I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

        **(7)** I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

    **B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or other Loan documents, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

    **A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

    **B. Sources.** You may use any and all remedies you have under state or federal law or in any instrument securing this Note.

    **C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

    **D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

    **E. Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

    **F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

    **G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest in effect as provided in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**16. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Note is in effect:

    **A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

    **B. Authority.** The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

    **C. Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**17. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

    **A. Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing this Loan.

    **B. Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for this Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance

company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**18. APPLICABLE LAW.** This Note is governed by the laws of Minnesota, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Minnesota, unless otherwise required by law.

**19. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay this Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on this Loan, or any number of us together, to collect this Loan. Extending this Loan or new obligations under this Loan, will not affect my duty under this Loan and I will still be obligated to pay this Loan. The duties and benefits of this Loan will bind and benefit the successors and assigns of you and me.

**20. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note is the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**21. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**22. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**23. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Loan. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**24. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**25. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

F H SCHMIDT INC

By _____
DOUGLAS W. SCHMIDT

By _____
DAVID L. SCHMIDT

LENDER:

THE OAKLEY NATIONAL BANK OF BUFFALO

By _____
Randy Haskins, President

# GUARANTY
(Continuing Debt - Unlimited)

DATE AND PARTIES. The date of this Guaranty is June 2, 2004. The parties and their addresses are:

LENDER:
THE OAKLEY NATIONAL BANK OF BUFFALO
910 COMMERCIAL DRIVE
PO BOX 40
BUFFALO, Minnesota 55313
Telephone: (763) 682-1142

BORROWER:
F H SCHMIDT INC
a Corporation
109 Highway 55 West
BUFFALO, Minnesota 55313-4217

GUARANTOR:
DOUGLAS W. SCHMIDT
109 HWY 55 W
BUFFALO, Minnesota 55313



1. DEFINITIONS. As used in this Guaranty, the terms have the following meanings:

A. Pronouns. The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together with their heirs, successors and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Debt.

B. Note. "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

C. Debt. "Debt" refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, the Note, and this Guaranty.

D. Property. "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

2. AGREEMENT TO GUARANTY. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt, or to induce you to extend and/or maintain credit, or grant any other financial accomodation, I absolutely and unconditionally promise to pay and guaranty the full and prompt payment of the following Debt when due (whether at maturity or upon acceleration), including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting the Debt and in enforcing this Guaranty and all other agreements with respect to the Borrower.

3. SPECIFIC AND FUTURE DEBT GUARANTY. I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s): A promissory note or other agreement, No. 1034554, dated May 9, 2004, from F H SCHMIDT INC (Borrower) to you, in the amount of $100,000.00.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

4. EXTENSIONS. I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

5. UNCONDITIONAL LIABILITY. I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

6. BANKRUPTCY. If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

7. REVOCATION. I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower

before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

8. PROPERTY. I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

9. DEFAULT. I will be in default if any of the following occur:

A. Payments. I fail to make a payment in full when due.

B. Insolvency or Bankruptcy. I make an assignment for the benefit of creditors or become insolvent, either because my liabilities exceed my assets or I am unable to pay my debts as they become due; or I petition for protection under federal, state or local bankruptcy, insolvency or debtor relief laws, or am the subject of a petition or action under such laws and fail to have the petition or action dismissed within a reasonable period of time not to exceed 60 days.

C. Death or Incompetency. I die or am declared legally incompetent.

D. Failure to Perform. I fail to perform any condition or to keep any promise or covenant of this Guaranty.

E. Other Documents. A default occurs under the terms of any other transaction document.

F. Other Agreements. I am in default on any other debt or agreement I have with you.

G. Misrepresentation. I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. Judgment. I fail to satisfy or appeal any judgment against me.

I. Forfeiture. The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. Name Change. I change my name or assume an additional name without notifying you before making such a change.

K. Property Transfer. I transfer all or a substantial part of my money or property.

L. Property Value. The value of the Property declines or is impaired.

M. Insecurity. You reasonably believe that you are insecure.

10. WAIVERS AND CONSENT. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers. In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing the Debt.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. Waiver of Claims. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

11. REMEDIES. After the Borrower or I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any instrument securing the Debt.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. Payments Made on the Borrower's Behalf. Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Attachment. You may attach or garnish my wages or earnings.

G. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

12. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any instrument executed in connection with the creation of any Debt guarantied by this Guaranty. All fees and expenses will be secured by the Property I have granted you, if any. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect the Debt guarantied by this Guaranty as awarded by any court exercising jurisdiction under the Bankruptcy Code.

13. WARRANTIES AND REPRESENTATIONS. I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any Information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

14. RELIANCE. I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain the Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guarantied hereby, and from any loan and/or financial accommodations resulting in the creation of other Debt guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

15. APPLICABLE LAW. This Guaranty is governed by the laws of Minnesota, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located.

16. AMENDMENT, INTEGRATION AND SEVERABILITY. This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

17. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

19. CREDIT INFORMATION. I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

20. SIGNATURES. By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.


GUARANTOR:

X _Douglas W Schmidt_
DOUGLAS W. SCHMIDT
Individually


LENDER:

THE OAKLEY NATIONAL BANK OF BUFFALO

By_____
Randy Haskins, President

# GUARANTY
(Continuing Debt · Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is June 2, 2004. The parties and their addresses are:

**LENDER:**
THE OAKLEY NATIONAL BANK OF BUFFALO
910 COMMERCIAL DRIVE
PO BOX 40
BUFFALO, Minnesota 55313
Telephone: (763) 682-1142

**BORROWER:**
F H SCHMIDT INC
a Corporation
109 Highway 55 West
BUFFALO, Minnesota 55313-4217

**GUARANTOR:**
DAVID L. SCHMIDT
109 HWY 55 W
BUFFALO, Minnesota 55313



EXHIBIT
**3**

1. **DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

   A. **Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together with their heirs, successors and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Debt.

   B. **Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

   C. **Debt.** "Debt" refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, the Note, and this Guaranty.

   D. **Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

2. **AGREEMENT TO GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt, or to induce you to extend and/or maintain credit, or grant any other financial accomodation, I absolutely and unconditionally promise to pay and guaranty the full and prompt payment of the following Debt when due (whether at maturity or upon acceleration), including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting the Debt and in enforcing this Guaranty and all other agreements with respect to the Borrower.

3. **SPECIFIC AND FUTURE DEBT GUARANTY.** I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s): A promissory note or other agreement, No. 1034554, dated May 9, 2004, from F H SCHMIDT INC (Borrower) to you, in the amount of $100,000.00.

   You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

4. **EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

5. **UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

6. **BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

7. **REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower

before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**8. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**9. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** I make an assignment for the benefit of creditors or become insolvent, either because my liabilities exceed my assets or I am unable to pay my debts as they become due; or I petition for protection under federal, state or local bankruptcy, insolvency or debtor relief laws, or am the subject of a petition or action under such laws and fail to have the petition or action dismissed within a reasonable period of time not to exceed 60 days.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

**E. Other Documents.** A default occurs under the terms of any other transaction document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** The value of the Property declines or is impaired.

**M. Insecurity.** You reasonably believe that you are insecure.

**10. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing the Debt.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt Instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**C. Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**11. REMEDIES.** After the Borrower or I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any instrument securing the Debt.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

**D. Payments Made on the Borrower's Behalf.** Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

**E. Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

**F. Attachment.** You may attach or garnish my wages or earnings.

**G. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**12. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any instrument executed in connection with the creation of any Debt guarantied by this Guaranty. All fees and expenses will be secured by the Property I have granted you, if any. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect the Debt guarantied by this Guaranty as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**13. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**14. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain the Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guarantied hereby, and from any loan and/or financial accommodations resulting in the creation of other Debt guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

**15. APPLICABLE LAW.** This Guaranty is governed by the laws of Minnesota, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located.

**16. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. SIGNATURES.** By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

_David L. Schmidt_

DAVID L. SCHMIDT
Individually

LENDER:

THE OAKLEY NATIONAL BANK OF BUFFALO

By_____
Randy Haskins, President

| LOAN NUMBER | LOAN NA... | ...CT. NUMBER | AGREE.. DATE | INIT... |
|---|---|---|---|---|
| 1034654 | F. H. SCHMIDT, INC. | 0003301914-01 | 09/10/07 | MT |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $100,000.00 | Wall Street Journal Prime plus 0.250% | 8.5% | 09/01/08 | Commercial |
| | | Creditor Use Only | | |

**COPY**

# COMMERCIAL LOAN AGREEMENT
### Revolving Draw Loan

**DATE AND PARTIES.** The date of this Commercial Loan Agreement (Agreement) is August 10, 2007. The parties and their addresses are as follows:

**LENDER:**
  KLEINBANK
  1550 Audubon Road
  Chaska, Minnesota 55318

**BORROWER:**
  F. H. SCHMIDT, INC.
  a Minnesota Corporation
  109 HIGHWAY 65 W
  BUFFALO, Minnesota 55313-8924

**1. DEFINITIONS.** For the purposes of this Agreement, the following terms have the following meanings.

**A. Accounting Terms.** In this Agreement, any accounting terms that are not specifically defined will have their customary meanings under generally accepted accounting principles.

**B. Insiders.** Insiders include those defined as insiders by the United States Bankruptcy Code, as amended; or to the extent left undefined, include without limitation any officer, employee, stockholder or member, director, partner, or any immediate family member of any of the foregoing, or any person or entity which, directly or indirectly, controls, is controlled by or is under common control with me.

**C. Loan.** The Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Pronouns.** The pronouns "I", "me" and "my" refer to every Borrower signing this Agreement, individually or together. "You" and "your" refers to the Loan's lender.

**F. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**2. ADVANCES.** Advances under this Agreement are made according to the following terms and conditions.

**A. Multiple Advances - Revolving.** In accordance with the terms of this Agreement and other Loan Documents, you will extend to me and I may from time to time borrow, repay, and reborrow, one or more advances. The amount of advances will not exceed $100,000.00 (Principal).

**B. Requests for Advances.** My requests are a warranty that I am in compliance with the Loan Documents. When required by you for a particular method of advance, my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents, and instruments that you require for the Loan. Any payment by you of any check, share draft or other charge may, at your option, constitute an advance on the Loan to me. All advances will be made in United States dollars. I will indemnify you and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine. To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized or this person's signature is not genuine.

I or anyone I authorize to act on my behalf may request advances by the following methods.

  (1) I make a request in person.

  (2) I make a request by phone.

  (3) I make a request by mail.

**C. Advance Limitations.** In addition to any other Loan conditions, requests for, and access to, advances are subject to the following limitations.

  (1) Discretionary Advances. You will make all Loan advances at your sole discretion.

  (2) Advance Amount. Subject to the terms and conditions contained in this Agreement, advances will be made in exactly the amount I request.

  (3) Cut-Off Time. Requests for an advance received before 03:00 PM will be made on any day that you are open for business, on the day for which the advance is requested.

  (4) Disbursement of Advances. On my fulfillment of this Agreement's terms and conditions, you will disburse the advance in any manner as you and I agree.

  (5) Credit Limit. I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit. You may, at your option, grant such a request without obligating yourselves to do so in the future. I will pay any over advances in addition to your regularly scheduled payments. I will repay any over advance by repaying you in full within 10 days after the overdraft occurs.

  (6) Records. Your records will be conclusive evidence as to the amount of advances, the Loan's unpaid principal balances and the accrued interest.

**D. Conditions.** I will satisfy all of the following conditions before you either issue any promissory notes or make any advances under this Agreement.

  (1) No Default. There has not been a default under this Agreement or any other Loan Documents nor would a default result from making the Loan or any advance.

  (2) Information. You have received all documents, information, certifications and warranties as you may require, all properly executed, if appropriate, on forms acceptable to you. This includes, but is not limited to, the documents and other items listed in the Loan Checklist Report which is hereby incorporated by reference into this Agreement.

  (3) Inspections. You have made all inspections that you consider necessary and are satisfied with this inspection.

  (4) Conditions and Covenants. I will have performed and complied with all conditions required for an advance and all covenants in this Agreement and any other Loan Documents.

  (5) Warranties and Representations. The warranties and representations contained in this Agreement are true and correct at the time of making the requested advance.

  (6) Financial Statements. My most recent financial statements and other financial reports, delivered to you, are current, complete, true and accurate in all material respects and fairly represent my financial condition.

  (7) Bankruptcy Proceedings. No proceeding under the United States Bankruptcy Code has been commenced by or against me or any of my affiliates.

**3. MATURITY DATE.** I agree to fully repay the Loan by August 1, 2008.

**4. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Loan is in effect, except when this Agreement provides otherwise.

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Loan and the obligation evidenced by the Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party to or which I am or any of my property is subject.

**C. Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**D. Hazardous Substances.** Except as I previously disclosed in writing and you acknowledge in writing, no Hazardous Substance, underground tanks, private dumps or open wells are currently located at, on, in, under or about the Property.



**EXHIBIT 4**

**E. Use of Property.** After diligent inquiry, I do not know or have reason to know that any Hazardous Substance has been discharged, leached or disposed of, in violation of any Environmental Law, from the property onto, over or into any other property, or from any other property onto, over or into the property.

**F. Environmental Laws.** I have no knowledge or reason to believe that there is any pending or threatened investigation, claim, judgment or order, violation, lien, or other notice under any Environmental Law that concerns me or the property. The property and any activities on the property are in full compliance with all Environmental Law.

**G. Loan Purpose.** The purpose of this Loan is Working Capital.

**H. No Other Liens.** I own or lease all property that I need to conduct my business and activities. I have good and marketable title to all property that I own or lease. All of my Property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those to you or those you consent to in writing.

**I. Compliance With Laws.** I am not violating any laws, regulations, rules, orders, judgments or decrees applicable to me or my property, except for those which I am challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should I lose.

**J. Legal Dispute.** There are no pending or threatened lawsuits, arbitrations or other proceedings against me or my property that singly or together may materially and adversely affect my property, operations, financial condition, or business.

**K. Adverse Agreements.** I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations.

**L. Other Claims.** There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents. No outstanding claims or rights exist that may result in a lien on the Property, the Property's proceeds and the proceeds of proceeds, except liens that were disclosed to and agreed to by you in writing.

**M. Solvency.** I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities. I will not become insolvent by the execution or performance of this Loan.

**5. FINANCIAL STATEMENTS.** I will prepare and maintain my financial records using consistently applied generally accepted accounting principles then in effect. I will provide you with financial information in a form that you accept and under the following terms.

**A. Certification.** I represent and warrant that any financial statements that I provide you fairly represents my financial condition for the stated periods, is current, complete, true and accurate in all material respects, includes all of my direct or contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date the financial information was prepared.

**B. Frequency.** Annually, I will provide to you my financial statements, tax returns, annual internal audit reports or those prepared by independent accountants as soon as available or at least within 30 days after the close of each of my fiscal years. Any annual financial statements that I provide you will be compiled statements.

**C. SEC Reports.** I will provide you with true and correct copies of all reports, notices or statements that I provide to the Securities and Exchange Commission, any securities exchange or my stockholders, owners, or the holders of any material indebtedness as soon as available or at least within  days after issuance.

**D. Requested Information.** I will provide you with any other information about my operations, financial affairs and condition within  days after your request.

**E. Additional Financial Statements Term.** BORROWER TO PROVIDE LENDER THE FOLLOWING:
ANNUAL CORPORATE TAX RETURN
ANNUAL GUARANTOR PERSONAL FINANCIAL STATEMENTS.

**6. COVENANTS.** Until the Loan and all related debts, liabilities and obligations are paid and discharged, I will comply with the following terms, unless you waive compliance in writing.

**A. Participation.** I consent to you participating or syndicating the Loan and sharing any information that you decide is necessary about me and the Loan with the other participants or syndicators.

**B. Inspection.** Following your written request, I will immediately pay for all one-time and recurring out-of-pocket costs that are related to the inspection of my records, business or Property that secures the Loan. Upon reasonable notice, I will permit you or your agents to enter any of my premises and any location where my Property is located during regular business hours to do the following.

    (1) You may inspect, audit, check, review and obtain copies from my books, records, journals, orders, receipts, and any correspondence and other business related data.

    (2) You may discuss my affairs, finances and business with any one who provides you with evidence that they are a creditor of mine, the sufficiency of which will be subject to your sole discretion.

    (3) You may inspect my Property, audit for the use and disposition of the Property's proceeds and proceeds of proceeds; or do whatever you decide is necessary to preserve and protect the Property and your interest in the Property.

After prior notice to me, you may discuss my financial condition and business operations with my independent accountants, if any, or my chief financial officer and I may be present during these discussions. As long as the Loan is outstanding, I will direct all of my accountants and auditors to permit you to examine my records in their possession and to make copies of these records. You will use your best efforts to maintain the confidentiality of the information you or your agents obtain, except you may provide your regulator, if any, with required information about my financial condition, operation and business or that of my parent, subsidiaries or affiliates.

**C. Business Requirements.** I will preserve and maintain my present existence and good standing in the jurisdiction where I am organized and all of my rights, privileges and franchises. I will do all that is needed or required to continue my business or activities as presently conducted, by obtaining licenses, permits and bonds everywhere I engage in business or activities or own, lease or locate my property. I will obtain your prior written consent before I cease my business or before I engage in any new line of business that is materially different from my present business.

**D. Compliance with Laws.** I will not violate any laws, regulations, rules, orders, judgments or decrees applicable to me or my Property, except for those which I challenge in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should I lose. Laws include without limitation the Federal Fair Labor Standards Act requirements for producing goods, the federal Employee Retirement Income Security Act of 1974's requirements for the establishment, funding and management of qualified deferred compensation plans for employees, health and safety laws, environmental laws, tax laws, licensing and permit laws. On your request, I will provide you with written evidence that I have fully and timely paid my taxes, assessments and other governmental charges levied or imposed on me, my income or profits and my property. Taxes include without limitation sales taxes, use taxes, personal property taxes, documentary stamp taxes, recordation taxes, franchise taxes, income taxes, withholding taxes, FICA taxes and unemployment taxes. I will adequately provide for the payment of these taxes, assessments and other charges that have accrued but are not yet due and payable.

**E. New Organizations.** I will obtain your written consent and any necessary changes to the Loan Documents before I organize or participate in the organization of any entity, merge into or consolidate with any one, permit any one else to merge into me, acquire all or substantially all of the assets of any one else or otherwise materially change my legal structure, management, ownership or financial condition.

**F. Dealings with Insiders.** I will not purchase, acquire or lease any property or services from, or sell, provide or lease any property or services to, or permit any outstanding loans or credit extensions to, or otherwise deal with, any insiders except as required under contracts existing at the time I applied for the Loan and approved by you or as this Agreement otherwise permits. I will not change or breach these contracts existing at Loan application so as to cause an acceleration of or an increase in any payments due.

**G. Other Debts.** I will pay when due any and all other debts owed or guaranteed by me and will faithfully perform, or comply with all the conditions and obligations imposed on me concerning the debt or guaranty.

**H. Other Liabilities.** I will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations, except: debt in existence on the date of this Agreement and fully disclosed to you; debt subordinated in payment to you on conditions and terms acceptable to you; accounts payable incurred in the ordinary course of my business and paid under customary trade terms or contested in good faith with reserves satisfactory to you.

**I. Notice to You.** I will promptly notify you of any material change in my financial condition, of the occurrence of a default under the terms of this Agreement or any other Loan Document, or a default by me under any agreement between me and any third party which materially and adversely affects my property, operations, financial condition or business.

**J. Certification of No Default.** On your request, my chief financial officer or my independent accountant will provide you with a written certification that to the best of their knowledge no event of default exists under the terms of this Agreement or the other Loan Documents, and that there exists no other action, condition or event which with the giving of notice or lapse of time or both would constitute a default. As requested, my chief financial officer or my independent accountant will also provide you with computations demonstrating compliance with any financial covenants and ratios contained in this Agreement. If an action, condition or event of default does exist, the certificate must accurately and fully disclose the extent and nature of this action, condition or event and state what must be done to correct it.

**K. Use of Loan Proceeds.** I will not permit the loan proceeds to be used to purchase, carry, reduce, or retire any loan originally incurred to purchase or carry any margin stock or otherwise cause the Loan to violate Federal Reserve Board Regulations U or X, or Section 8 of the Securities and Exchange Act of 1934 and its regulations, as amended.

**L. Dispose of No Assets.** Without your prior written consent or as the Loan Documents permit, I will not sell, lease, assign, transfer, dispose of or otherwise distribute all or substantially all of my assets to any person other than in the ordinary course of business for the assets' depreciated book value or more.

**M. No Other Liens.** I will not create, permit or suffer any lien or encumbrance upon any of my properties for or by anyone, other than you, except for: nonconsensual liens imposed by law arising out of the ordinary course of business on obligations that are not overdue or which I am contesting in good faith after making appropriate reserves; valid purchase money security interests on personal property; or any other liens specifically agreed to by you in writing.

**N. Guaranties.** I will not guaranty or become liable in any way as surety, endorser (other than as endorser of negotiable instruments in the ordinary course of business) or accommodation endorser or otherwise for the debt or obligations of any other person or entity, except to you or as you otherwise specifically agree in writing.

COPY

**O. No Default under Other Agreements.** I will not allow to occur, or continue unremedied, any act, event or condition which constitutes a default or which, with the passage of time or giving of notice, or both, would constitute a default under any agreement, document, instrument or undertaking to which I am a party or by which I may be bound.

**P. Legal Disputes.** I will promptly notify you in writing of any threatened or pending lawsuit, arbitration or other proceeding against me or any of my property, not identified in my financial statements, or that singly or together with other proceedings may materially and adversely affect my property, operations, financial condition or business. I will use my best efforts to bring about a favorable and speedy result of any of these lawsuits, arbitrations or other proceedings.

**Q. Other Notices.** I will immediately provide you with any information that may materially and adversely affect my ability to perform this agreement and of its anticipated effect.

**R. No Change in Capital.** I will not release, redeem, retire, purchase or otherwise acquire, directly or indirectly, any of my capital stock or other equity security or partnership interest, or make any change in my capital structure, except to the extent required by any agreements signed prior to this Agreement and disclosed to you or with your prior written consent.

**S. Loan Obligations.** I will make full and timely payment of all principal and interest obligations, and comply with the other terms and agreements contained in this Agreement and in the other Loan Documents.

**T. Insurance.** I will obtain and maintain insurance with insurers, in amounts and coverages that are acceptable to you and customary with industry practice. This may include without limitation insurance policies for public liability, fire, hazard and extended risk, workers compensation, and, at your request, business interruption and/or rent loss insurance. At your request, I will deliver to you certified copies of all of these insurance policies, binders or certificates. I will obtain and maintain a mortgagee or lender loss payee endorsement for you when these endorsements are available. I will immediately notify you of cancellation or termination of insurance. I will require all insurance policies to provide you with at least 10 days prior written notice to you of cancellation or modification. I consent to your using or disclosing information relative to any contract of insurance required by the Loan for the purpose of replacing this insurance. I also authorize my insurer and you to exchange all relevant information related to any contract of insurance required by any document executed as part of this Loan.

**U. Property Maintenance.** I will keep all tangible and intangible property that I consider necessary or useful in my business in good working condition by making all needed repairs, replacements and improvements and by making all rental, lease or other payments due on this property.

**V. Property Loss.** I will immediately notify you, and the insurance company when appropriate, of any material casualty, loss or depreciation to the Property or to my other property that affects my business.

**W. Accounts Receivable Collection.** I will collect and otherwise enforce all of my unpaid Accounts Receivable at my cost and expense, until you end my authority to do so, which you may do at any time to protect your best interests. I will not sell, assign or otherwise dispose of any Accounts Receivable without your written consent. I will not commingle the Accounts Receivable proceeds with any of my other property.

**X. Reserves.** You may set aside and reserve Loan proceeds for Loan interest, fees and expenses, taxes, and insurance. I grant you a security interest in the reserves.

No interest will accrue on any reserve Loan proceeds. Disbursement of reserves is disbursement of the Loan's proceeds. At my request, you will disburse the reserves for the purpose they were set aside for, as long as I am not in default under this Agreement. You may directly pay these reserved items, reimburse me for payments I made, or reduce the reserves and increase the Loan proceeds available for disbursement.

**Y. Additional Taxes.** I will pay all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to this Loan and any Loan Documents.

**7. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

**8. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Loan immediately due. If I am a debtor in a bankruptcy petition or in an application filed under section 5(a)(3) of the Securities Investor Protection Act, the Loan is automatically accelerated and immediately due and payable without notice or demand upon filing of the petition or application.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of the Loan, and accrue interest at the highest post-maturity interest rate.

**E. Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of the Loan against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of the Loan" means the total amount to which you are entitled to demand payment under the terms of the Loan at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Loan, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**9. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest in effect as provided in the terms of this Loan. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**10. APPLICABLE LAW.** This Agreement is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Minnesota, unless otherwise required by law.

**11. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. You may assign all or part of your rights or duties under this Agreement or the Loan Documents without my consent. If you assign this Agreement, all of my covenants, agreements, representations and warranties contained in this Agreement or the Loan Documents will benefit your successors and assigns. I may not assign this Agreement or any of my rights under it without your prior written consent. The duties of the Loan will bind my successors and assigns.

F. H. SCHMIDT, INC.

**12. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**13. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**14. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**15. SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

BORROWER:

F. H. SCHMIDT, INC.

By
DOUGLAS W. SCHMIDT, PRESIDENT/TREASURER

By
DAVID L. SCHMIDT, CHIEF EXECUTIVE OFFICER/SECRETARY

**DATE AND PARTIES.** The date of this Security Agreement (Agreement) is August 10, 2007. The parties and their addresses are:

**COPY**

SECURED PARTY:
 KLEINBANK
 1550 Audubon Road
 Chaska, Minnesota 55318

DEBTOR:
 F. H. SCHMIDT, INC.
 a Minnesota Corporation
 109 HIGHWAY 55 W
 BUFFALO, Minnesota 55313-8924

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

**1. SECURED DEBTS.** The term "Secured Debts" includes and this Agreement will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 1034554, dated June 28, 2006, from me to you, in the amount of $100,000.00.

**B. All Debts.** All present and future debts from me to you, even if this Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Agreement. Nothing in this Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Agreement will not secure any debt for which you fail to give any required notice of the right of rescission. This Agreement will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices.

**C. Sums Advanced.** All sums advanced and expenses incurred by you under the terms of this Agreement.

Loan Documents refer to all the documents executed in connection with the Secured Debts.

**2. SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, I give you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**3. PROPERTY DESCRIPTION.** The Property is described as follows:

**A. Inventory.** All inventory which I hold for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

**B. Accounts and Other Rights to Payment.** All rights I have now or in the future to payments including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned, whether or not I have earned such payment by performance. This includes any rights and interests (including all liens and security interests) which I may have by law or agreement against any Account Debtor or obligor of mine.

**C. General Intangibles.** All general intangibles including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use my name.

**D. Equipment.** All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will also be included in the Property, but such a list is not necessary for a valid security interest in my equipment.

**4. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Agreement is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Agreement and the obligation evidenced by this Agreement are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am an entity organized and registered under the laws of Minnesota. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**D. Business Name.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**E. Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**5. DUTIES TOWARD PROPERTY.**

**A. Protection of Secured Party's Interest.** I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

**B. Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change its location without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my address, name or, if an organization, any change in my identity or structure.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

**C. Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission, except for inventory sold in the ordinary course of business at fair market value, or at a minimum price established between you and me. If I am in default under this Agreement, I may not sell the inventory portion of the Property even in the ordinary course of business. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**D. Additional Duties Specific to Accounts.** I will not settle any Account for less than its full value without your written permission. Until you tell me otherwise, I will collect all Accounts in the ordinary course of business. I will not dispose of the Accounts by assignment without your prior written consent. I will keep the proceeds from all the Accounts and any goods which are returned to me or which I take back. I will not commingle them with any of my other property. I will deliver the Accounts to you at your request. If you ask me to pay you the full price on any returned items or items retaken by me, I will do so. I will make no material change in the terms of any Account, and I will give you any statements, reports, certificates, lists of Account Debtors (showing names, addresses and amounts owing), invoices applicable to each Account, and other data in any way pertaining to the Accounts as you may request.

F. H. SCHMIDT, INC.
Minnesota Security Agreement
MN/4CarolynM0002200000876800808 1007Y     ©1996 Bankers Systems, Inc., St. Cloud, MN   □     Page 1



EXHIBIT
**5**

**6. INSURANCE.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. I acknowledge and agree that you or one or your affiliates may receive commissions on the purchase of this insurance.

**7. COLLECTION RIGHTS OF THE SECURED PARTY.** Account Debtor means the person who is obligated on an account, chattel paper, or general intangible. I authorize you to notify my Account Debtors of your security interest and to deal with the Account Debtors' obligations at your discretion. You may enforce the obligations of an Account Debtor, exercising any of my rights with respect to the Account Debtors' obligations to make payment or otherwise render performance to me, including the enforcement of any security interest that secures such obligations. You may apply proceeds received from the Account Debtors to the Secured Debts or you may release such proceeds to me.

I specifically and irrevocably authorize you to exercise any of the following powers at my expense, without limitation, until the Secured Debts are paid in full:

  A. demand payment and enforce collection from any Account Debtor or Obligor by suit or otherwise.

  B. enforce any security interest, lien or encumbrance given to secure the payment or performance of any Account Debtor's obligation constituting Property.

  C. file proofs of claim or similar documents in the event of bankruptcy, insolvency or death of any person obligated as an Account Debtor.

  D. compromise, release, extend, or exchange any indebtedness of an Account Debtor.

  E. take control of any proceeds of the Account Debtors' obligations and any returned or repossessed goods.

  F. endorse all payments by any Account Debtor which may come into your possession as payable to me.

  G. deal in all respects as the holder and owner of the Account Debtors' obligations.

**8. AUTHORITY TO PERFORM.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Agreement or any other Loan Document, you are authorized to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

  A. pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

  B. pay any rents or other charges under any lease affecting the Property.

  C. order and pay for the repair, maintenance and preservation of the Property.

  D. file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

  E. place a note on any chattel paper indicating your interest in the Property.

  F. take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

  G. handle any suits or other proceedings involving the Property in my name.

  H. prepare, file, and sign my name to any necessary reports or accountings.

  I. make an entry on my books and records showing the existence of this Agreement.

  J. notify any Account Debtor of your interest in the Property and tell the Account Debtor to make payments to you or someone else you name.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**9. DEFAULT.** I will be in default if any of the following occur:

  A. **Payments.** I fail to make a payment in full when due.

  B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.

  C. **Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

  D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

  E. **Other Documents.** A default occurs under the terms of any other Loan Document.

  F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

  G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

  H. **Judgment.** I fail to satisfy or appeal any judgment against me.

  I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

  J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

  K. **Property Transfer.** I transfer all or a substantial part of my money or property.

  L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

  M. **Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

  N. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**10. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. However, if I am in default under this Agreement, I may not sell the inventory portion of the Property even in the ordinary course of business.

**11. REMEDIES.** After I default, you may at your option do any one or more of the following.

  A. **Acceleration.** You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.

  B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

  C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

  D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

  E. **Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

  F. **Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Minnesota Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing.

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.

G. Use and Operation. You may enter upon n... ...nises and tak... ...session of all or any part of my prop... ...or the purpose of preserving t... ...perty or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

H. Waiver. By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default if the default continues or occurs again.

**12. WAIVER OF CLAIMS.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**13. PERFECTION OF SECURITY INTEREST AND COSTS.** I authorize you to file a financing statement covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all taxes, fees and costs you pay or incur in connection with preparing, filing or recording any financing statements or other security interest filings on the Property. I agree to pay all actual costs of terminating your security interest.

**14. APPLICABLE LAW.** This Agreement is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Minnesota, unless otherwise required by law.

**15. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. You may sue each Debtor individually or together with any other Debtor. You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property. Debtor agrees that you and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Debtor's consent. Such a change will not release Debtor from the terms of this Agreement. If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to me or my consent, and this Agreement will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned. This Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Secured Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**16. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Debtor will be deemed to be notice to all Debtors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property. Time is of the essence.

**SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

DEBTOR:

F. H. SCHMIDT, INC.

By
DOUGLAS W. SCHMIDT, PRESIDENT/TREASURER

By
DAVID L. SCHMIDT, CHIEF EXECUTIVE OFFICER/SECRETARY

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Linda Voss

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

THE OAKLEY NATIONAL BANK OF BUFFALO
910 COMMERCIAL DRIVE, P.O. BOX 40
BUFFALO, Minnesota 55313

Filing NO: 20023888488
Filing Date: 2002/04/29
Filing Time: 5:00 PM
State of Minnesota
Processing Office: Secretary of State
Filed by: chuda01

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME |
| --- |
| F H SCHMIDT INC |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| --- | --- | --- | --- |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 1516 EAKEN AVE NE | BUFFALO | MN | 55313-4217 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | NONE |
| --- | --- | --- | --- | --- | --- |
| 41-1234423 | | Corporation | Minnesota | 2k-1160 | |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME |
| --- |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| --- | --- | --- | --- |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
| --- | --- | --- | --- | --- | --- |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |
| --- |
| THE OAKLEY NATIONAL BANK OF BUFFALO |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| --- | --- | --- | --- |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 910 COMMERCIAL DRIVE PO BOX 40 | BUFFALO | MN | 55313 | USA |

**4. This FINANCING STATEMENT covers the following collateral:** All of the following which Debtor owns now or in the future, together with all parts, accessories, repairs, replacements, improvements, and accessions, and wherever located: INVENTORY. All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business. EQUIPMENT: All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create or perfect a valid security interest in all of Debtor's equipment. ACCOUNTS AND OTHER RIGHTS TO PAYMENT: All rights to payments, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor. GENERAL INTANGIBLES: All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to (CONTINUED)

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☒ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
| --- | --- | --- | --- | --- | --- | --- |

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE) [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| --- | --- | --- | --- | --- |

**8. OPTIONAL FILER REFERENCE DATA**

Bankers Systems, Inc., St. Cloud, MN Form UCC-1-LAZ 5/30/2001

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

EXHIBIT
6

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**Filing NO: 20023888488**

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| | 9a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | F H SCHMIDT INC | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only <u>one</u> name (11a or 11b) - do not abbreviate or combine names

| | 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. TAX ID #; SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

12. ☐ ADDITIONAL SECURED PARTY'S <u>or</u> ☐ ASSIGNOR S/P'S NAME - insert only <u>one</u> name (12a or 12b)

| | 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

use Debtor's name.    ACCOUNTS RECEIVABLE OF F H
SCHMIDT, INC.    EQUIPMENT OF F H SCHMIDT, INC.
INVENTORY OF F H SCHMIDT, INC.

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check <u>only</u> if applicable and check <u>only</u> one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check <u>only</u> if applicable and check <u>only</u> one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction -- effective 30 years
☐ Filed in connection with a Public-Finance Transaction -- effective 30 years

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
**Phone: (800) 331-3282 Fax: (818) 662-4141**

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

**UCC Direct Services**     **10377557**
**P.O. Box 29071**
**Glendale, CA 91209-9071**

**MN, Secretary of State**

UCC Direct Services
Representation of filing

**This filing is Completed**
File Number : 20071552590
File Date : 14-FEB-2007

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
**20023888488**      29-APR-2002

1b. This FINANCING STATEMENT AMENDMENT is to be filed (for record)(or recorded) in the ☐ REAL ESTATE RECORDS

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

3. ☒ CONTINUATION: effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7
☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party
☐ DELETE name: Give record name to be deleted in item 6a or 6b
☐ ADD name: Complete item 7a or 7b and also item 7c; also complete items 7e-7g (if applicable)

6. CURRENT RECORD INFORMATION

| 6a. ORGANIZATION NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION

| 7a. ORGANIZATION NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restatate collateral description, or describe collateral ☐ assigned

9. NAME of SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment

| 9a. ORGANIZATION NAME **KleinBank** | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA   C120             3113356
**23790553**      Debtor Name: F H SCHMIDT INC

FILING OFFICE COPY - UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/03)

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 1034554 | F.H. SCHMIDT, INC. | 0003113356-05 | 07/22/08 | MT |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $100,000.00 | Wall Street Journal Prime plus 0.250% | 5.25% | 08/01/09 | Commercial |
| | | Creditor Use Only | | |

COPY

## PROMISSORY NOTE
### (Commercial - Revolving Draw)
### RENEWAL NOTE

**DATE AND PARTIES.** The date of this Promissory Note (Note) is July 22, 2008. The parties and their addresses are:

**LENDER:**
    KLEINBANK
    1550 Audubon Road
    Chaska, Minnesota 55318
    Telephone: (952) 361-0853

**BORROWER:**
    F.H. SCHMIDT, INC.
    a Minnesota Corporation
    109 HWY 55 W
    BUFFALO, Minnesota 55313



EXHIBIT
tabbies
7

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

   A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

   B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

   C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

   D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

   E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

   F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. RENEWAL.** This Note is a renewal of the following described note:

| Note Date | Note Number | Note Amount |
|---|---|---|
| August 10, 2007 | # 1034554 | $100,000.00 |

I have requested that the note listed in the table above be renewed. The remaining balance of the note listed in the table above is $100,000.00.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum outstanding principal balance of $100,000.00 (Principal), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

I may borrow up to the Principal amount more than one time.

**4. ADVANCES.** Advances under this Note are made according to the following terms and conditions.

   A. **Initial Advance.** On July 22, 2008 I will receive an initial advance of $100,000.00.

   B. **Requests for Advances.** My requests are a warranty that I am in compliance with all the Loan Documents. When required by you for a particular method of advance, my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents, and instruments that you require for the Loan. Any payment by you of any check, share draft or other charge may, at your option, constitute an advance on the Loan to me. All advances will be made in United States dollars. I will indemnify you and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine. To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized or this person's signature is not genuine.

   I or anyone I authorize to act on my behalf may request advances by the following methods.

       (1) I make a request in person.

       (2) I make a request by phone.

       (3) I make a request by mail.

   C. **Advance Limitations.** In addition to any other Loan conditions, requests for, and access to, advances are subject to the following limitations.

       (1) **Discretionary Advances.** You will make all Loan advances at your sole discretion.

       (2) **Advance Amount.** Subject to the terms and conditions contained in this Note, advances will be made in exactly the amount I request.

       (3) **Cut-Off Time.** Requests for an advance received before 03:00 PM will be made on any day that you are open for business, on the day for which the advance is requested.

(4) **Disbursement of Advances.** On my fulfillment of this Note's terms and conditions, you will disburse the advance in any manner as you and I agree.

(5) **Credit Limit.** I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit. You may, at your option, grant such a request without obligating yourselves to do so in the future. I will pay any over advances in addition to any regularly scheduled payments. I will repay any over advance by repaying you in full within 10 days after the overdraft occurs.

(6) **Records.** Your records will be conclusive evidence as to the amount of advances, the Loan's unpaid principal balances and the accrued interest.

**5. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 5.25 percent (Interest Rate) until July 23, 2008, after which time it may change as described in the Variable Rate subsection.

**A. Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the unpaid Principal balance of this Note at the rate in effect from time to time plus 5.000 percent, until said amounts have been paid in full. If you declare a default under the terms of this Loan for 30 days, or if I fail to pay the full amount due within 10 days past maturity, you may increase the Interest Rate otherwise payable as described in this section.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Minnesota usury laws under Minn. Stat. § 47.59.

**D. Accrual.** Interest accrues using an Actual/360 days counting method.

**E. Variable Rate.** The Interest Rate may change during the term of this transaction.

(1) **Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the base rate on corporate loans posted by at least 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate.

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) **Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change July 23, 2008 and daily thereafter.

(3) **Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 0.250 percent. The result of this calculation will be rounded to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) **Limitations.** The Interest Rate changes are subject to the following limitations:

(a) **Lifetime.** The Interest Rate will never be less than 5.250 percent.

(5) **Effect Of Variable Rate.** A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**6. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

**A. Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.
ADMINISTRATIVE FEE. A(n) ADMINISTRATIVE FEE fee of $250.00 payable from separate funds on or before today's date.

**7. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $10.00, whichever is greater. I will pay this late charge promptly but only once for each late payment. This amount may then increase so as to always be the highest amount allowed by law under Minnesota Statutes § 47.59.

**8. PAYMENT.** I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning September 1, 2008, then on the same day of each month thereafter. Any payment scheduled for a date falling beyond the last day of the month, will be due on the last day. A final payment of the entire unpaid outstanding balance of Principal and interest will be due August 1, 2009.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Interest payments will be applied first to any charges I owe other than late charges, then to accrued, but unpaid interest, then to late charges. Principal payments will be applied first to the outstanding Principal balance, then to any late charges. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

**9. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**10. LOAN PURPOSE.** The purpose of this Loan is RENEWAL OF NOTE #103455 TO EXTEND MATURITY DATE AND REDUCE RATE.

**11. ADDITIONAL TERMS.** Fax Fee: A Fax Fee of $25.00 will be assessed to fax a Loan Payoff Statement to a third party.

BORROWER TO PROVIDE TO LENDER THE FOLLOWING:

ANNUAL CORPORATE TAX RETURNS
ANNUAL PERSONAL FINANCIAL STATEMENTS FOR GUARANTORS
ANNUAL PERSONAL TAX RETURNS FOR GUARANTORS
MONTHLY ACCOUNTS RECEIVABLE AGING REPORT

Borrower's GLOBAL Debt Service Coverage shall not be less than 1.20 to 1 measured on a year to date basis at the end of each year-end. Debt Service Coverage shall be defined as earnings before interest, depreciation, and amortization ("EBIDA") of Borrower less dividends, divided by prior reporting period current maturity of long term debt and acquiring accrued interest expense, all as determined under generally accepted accounting principles.

**COPY**

**12. SECURITY.** The Loan is secured by previously executed, separate security instruments, including the following: BY ALL SECURITY AGREEMENTS ON FILE WITH KLEINBANK.

**13. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**14. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**15. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**16. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

**E. Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

G. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

17. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest in effect as provided in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

18. COMMISSIONS. I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

19. WARRANTIES AND REPRESENTATIONS. I make to you the following warranties and representations which will continue as long as this Note is in effect:

A. Power. I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

B. Authority. The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

C. Name and Place of Business. Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

20. INSURANCE. I agree to obtain the insurance described in this Loan Agreement.

A. Property Insurance. I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

B. Insurance Warranties. I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

21. APPLICABLE LAW. This Note is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Minnesota, unless otherwise required by law.

22. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS. My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

23. AMENDMENT, INTEGRATION AND SEVERABILITY. This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

24. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

25. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

26. CREDIT INFORMATION. I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Loan. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

27. ERRORS AND OMISSIONS. I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

28. SIGNATURES. By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

F.H. SCHMIDT, INC.

By _Douglas W. Schmidt_
DOUGLAS W. SCHMIDT, PRESIDENT/TREASURER

By _David L. Schmidt_
DAVID L. SCHMIDT, CHIEF EXECUTIVE OFFICER/SECRETARY





# GUARANTY
### (Continuing Debt - Unlimited)





COPY

EXHIBIT
tabbies
8

**DATE AND PARTIES.** The date of this Guaranty is July 22, 2008. The parties and their addresses are:

LENDER:
  KLEINBANK
  1550 Audubon Road
  Chaska, Minnesota 55318
  Telephone: (952) 361-0853

BORROWER:
  F.H. SCHMIDT, INC.
  a Minnesota Corporation
  109 HWY 55 W
  BUFFALO, Minnesota 55313

GUARANTOR:
  DOUGLAS W. SCHMIDT
  9951 23RD STREET NE
  BUFFALO, Minnesota 55313

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

A. **Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

B. **Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

C. **Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt, or to induce you to extend and/or maintain credit, or grant any other financial accommodation, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 1034564, dated July 22, 2008, from F.H. SCHMIDT, INC. (Borrower) to you, in the amount of $100,000.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

A. **Future Advances.** I waive notice of and consent to any and all future advances made to the Borrower by you.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

E. **Other Documents.** A default occurs under the terms of any other document relating to the Debt.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. Waiver of Claims. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

10. REMEDIES. After the Borrower or I default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. Payments Made on the Borrower's Behalf. Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Attachment. You may attach or garnish my wages or earnings.

G. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to your interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

11. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

12. WARRANTIES AND REPRESENTATIONS. I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

13. RELIANCE. I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain the Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guarantied hereby, and from any loan and/or financial accommodations resulting in the creation of other Debt guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

14. APPLICABLE LAW. This Guaranty is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

15. AMENDMENT, INTEGRATION AND SEVERABILITY. This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

16. ASSIGNMENT. If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

17. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

19. CREDIT INFORMATION. I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

20. SIGNATURES. By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

_Dougla W. Schm̆t_

DOUGLAS W. SCHMIDT
Individually



©1996 Bankers Systems, Inc., St. Cloud, MN Expert Page

# GUARANTY
(Continuing Debt - Unlimited)



**DATE AND PARTIES.** The date of this Guaranty is July 22, 2008. The parties and their addresses are:

**LENDER:**
KLEINBANK
1550 Audubon Road
Chaska, Minnesota 55318
Telephone: (952) 361-0853

**BORROWER:**
F.H. SCHMIDT, INC.
a Minnesota Corporation
109 HWY 55 W
BUFFALO, Minnesota 55313

**GUARANTOR:**
DAVID L. SCHMIDT
6956 23RD STREET NE
BUFFALO, Minnesota 55313

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

A. **Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

B. **Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

C. **Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt, or to induce you to extend and/or maintain credit, or grant any other financial accommodation, I absolutely and unconditionally agree to all terms of and guaranty to pay the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 1034554, dated July 22, 2008, from F.H. SCHMIDT, INC. (Borrower) to you, in the amount of $100,000.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

A. **Future Advances.** I waive notice of and consent to any and all future advances made to the Borrower by you.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

E. **Other Documents.** A default occurs under the terms of any other document relating to the Debt.

F. **Other Agreements.** I am in default on any other document or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control of the Borrower or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. Waiver of Claims. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

## 10. REMEDIES. After the Borrower or I default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. Payments Made on the Borrower's Behalf. Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Attachment. You may attach or garnish my wages or earnings.

G. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

11. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

12. WARRANTIES AND REPRESENTATIONS. I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

13. RELIANCE. I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain the Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guaranteed hereby, and from any loan and/or financial accommodations resulting in the creation of other Debt guaranteed hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

14. APPLICABLE LAW. This Guaranty is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

15. AMENDMENT, INTEGRATION AND SEVERABILITY. This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

16. ASSIGNMENT. If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

17. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

19. CREDIT INFORMATION. I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

20. SIGNATURES. By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR: _David L Schmidt_

DAVID L. SCHMIDT
Individually

# GUARANTY
(Continuing Debt - Unlimited)





DATE AND PARTIES. The date of this Guaranty is July 22, 2008. The parties and their addresses are:

LENDER:
KLEINBANK
1550 Audubon Road
Chaska, Minnesota 55318
Telephone: (952) 361-0853

BORROWER:
F.H. SCHMIDT, INC.
a Minnesota Corporation
109 HWY 55 W
BUFFALO, Minnesota 55313

GUARANTOR:
SCHMIDT LAND CO.
a Minnesota Corporation
109 HIGHWAY 55 WEST
BUFFALO, Minnesota 55313

1. DEFINITIONS. As used in this Guaranty, the terms have the following meanings:

A. Pronouns. The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

B. Note. "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

C. Property. "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

2. SPECIFIC AND FUTURE DEBT GUARANTY. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt, or to induce you to extend and/or maintain credit, or grant any other financial accommodation, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 1034554, dated July 22, 2008, from F.H. SCHMIDT, INC. (Borrower) to you, in the amount of $100,000.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

3. EXTENSIONS. I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

A. Future Advances. I waive notice of and consent to any and all future advances made to the Borrower by you.

4. UNCONDITIONAL LIABILITY. I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

5. BANKRUPTCY. If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation to you under this Guaranty will remain as an obligation to you and will not be considered as having been extinguished.

6. REVOCATION. I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

7. PROPERTY. I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

8. DEFAULT. I will be in default if any of the following occur:

A. Payments. I fail to make a payment in full when due.

B. Insolvency or Bankruptcy. The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

C. Business Termination. I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

D. Failure to Perform. I fail to perform any condition or to keep any promise or covenant of this Guaranty.

E. Other Documents. A default occurs under the terms of any other document relating to the Debt.

F. Other Agreements. I am in default on any other debt or agreement I have with you.

G. Misrepresentation. I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. Judgment. I fail to satisfy or appeal any judgment against me.

I. Forfeiture. The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. Name Change. I change my name or assume an additional name without notifying you before making such a change.

K. Property Transfer. I transfer all or a substantial part of my money or property.

L. Property Value. You determine in good faith that the value of the Property has declined or is impaired.

M. Material Change. Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

N. Insecurity. You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

9. WAIVERS AND CONSENT. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers. In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.



(6) You may enter into any sales, repurchases or participations of the Debt by any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceeding under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. Waiver of Claims. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

10. REMEDIES. After the Borrower or I default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. Payments Made on the Borrower's Behalf. Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

G. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

11. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

12. WARRANTIES AND REPRESENTATIONS. I make to you the following warranties and representations which will continue as long as this Guaranty is in effect:

A. Power. I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

B. Authority. The execution, delivery and performance of this Guaranty and the obligation evidenced by this Guaranty are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

C. Name and Place of Business. Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

13. RELIANCE. I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain the Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guarantied hereby, and from any loan and/or financial accommodations resulting in the creation of other Debt guarantied hereby, and that this Guaranty is given for a business purpose. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion or the opinion of the directors or officers of my business, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely exclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

14. APPLICABLE LAW. This Guaranty is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

15. AMENDMENT, INTEGRATION AND SEVERABILITY. This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

16. ASSIGNMENT. If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

17. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

19. CREDIT INFORMATION. I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

20. SIGNATURES. By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

SCHMIDT LAND CO.

By _____
DAVID L. SCHMIDT, PRESIDENT

By _____
DOUGLAS W. SCHMIDT, SECRETARY

# GUARANTY
[Continuing Debt - Unlimited]




**DATE AND PARTIES.** The date of this Guaranty is July 22, 2008. The parties and their addresses are:

LENDER:
    **KLEINBANK**
    1550 Audubon Road
    Chaska, Minnesota 55318
    Telephone: (952) 361-0863

BORROWER:
    **F.H. SCHMIDT, INC.**
    a Minnesota Corporation
    109 HWY 55 W
    BUFFALO, Minnesota 55313

GUARANTOR:
    **SCHMIDT BUILDERS OF BUFFALO, INC.**
    a Corporation
    109 HIGHWAY 55 WEST
    BUFFALO, Minnesota 55313

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

  **A. Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

  **B. Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

  **C. Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt, or to induce you to extend and/or maintain credit, or grant any other financial accommodation, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 1034654, dated July 22, 2008, from F.H. SCHMIDT, INC. (Borrower) to you, in the amount of $100,000.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, modifications and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

  **A. Future Advances.** I waive notice of and consent to any and all future advances made to the Borrower by you.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims for you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

  **A. Payments.** I fail to make a payment in full when due.

  **B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

  **C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

  **D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

  **E. Other Documents.** A default occurs under the terms of any other document relating to the Debt.

  **F. Other Agreements.** I am in default on any other debt or agreement I have with you.

  **G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

  **H. Judgment.** I fail to satisfy or appeal any judgment against me.

  **I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

  **J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

  **K. Property Transfer.** I transfer all or a substantial part of my money or property.

  **L. Property Value.** The Property in good faith that the value of the Property has declined or is impaired.

  **M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

  **N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

  **A. Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

    (1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

    (2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

    (3) You may release, substitute or impair any Property.

    (4) You, or any institution participating in the Debt, may invoke your right of set-off.



...s) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to you have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control of a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. Waiver of Claims. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

10. **REMEDIES.** After the Borrower I default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. Payments Made on the Borrower's Behalf. Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

G. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

11. **COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

12. **WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Guaranty is in effect:

A. Power. I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

B. Authority. The execution, delivery and performance of this Guaranty and the obligation evidenced by this Guaranty are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

C. Name and Place of Business. Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

13. **RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain the Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guaranteed hereby, and from any loan and/or financial accommodations resulting in the creation of other Debt guarantied hereby, and that this Guaranty is given for a business purpose. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion or the opinion of the directors or officers of my business, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

14. **APPLICABLE LAW.** This Guaranty is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

15. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

16. **ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

17. **INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

18. **NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

19. **CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

20. **SIGNATURES.** By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

SCHMIDT BUILDERS OF BUFFALO, INC.

By _Douglas W. Schmidt_
DOUGLAS W. SCHMIDT, TREASURER

By _David L. Schmidt_
DAVID L. SCHMIDT, SECRETARY

COPY

# GUARANTY
(Continuing Debt - Unlimited)



**DATE AND PARTIES.** The date of this Guaranty is July 22, 2008. The parties and their addresses are:

**LENDER:**
 KLEINBANK
 1550 Audubon Road
 Chaska, Minnesota 55318
 Telephone: (952) 361-0853

**BORROWER:**
 F.H. SCHMIDT, INC.
 a Minnesota Corporation
 109 HWY 55 W
 BUFFALO, Minnesota 55313

**GUARANTOR:**
 SCHMIDT DEVELOPMENT CORP.
 a Corporation
 109 HIGHWAY 55 WEST
 BUFFALO, Minnesota 55313

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

 **A. Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

 **B. Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

 **C. Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt, or to induce you to extend and/or maintain credit, or grant any other financial accommodation, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 1034554, dated July 22, 2008, from F.H. SCHMIDT, INC. (Borrower) to you, in the amount of $100,000.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

 **A. Future Advances.** I consent and agree to any and all future advances made to the Borrower by you.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or any liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

 **A. Payments.** I fail to make a payment in full when due.

 **B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

 **C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

 **D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

 **E. Other Documents.** A default occurs under the terms of any other document relating to the Debt.

 **F. Other Agreements.** I am in default on any other debt or agreement I have with you.

 **G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

 **H. Judgment.** I fail to satisfy or appeal any judgment against me.

 **I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

 **J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

 **K. Property Transfer.** I transfer all or a substantial part of my money or property.

 **L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

 **M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

 **N. Insecurity.** You determine in good faith that a material adverse change has occurred in any financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

 **A. Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

  (1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

  (2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

  (3) You may release, substitute or impair any Property.

  (4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of this Guaranty or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcing the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. Waiver of Claims. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

10. REMEDIES. After the Borrower or I default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. Payments Made on the Borrower's Behalf. Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

G. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

11. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

12. WARRANTIES AND REPRESENTATIONS. I make to you the following warranties and representations which will continue as long as this Guaranty is in effect:

A. Power. I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

B. Authority. The execution, delivery and performance of this Guaranty and the obligation evidenced by this Guaranty are within my powers, have been duly authorized, have received all necessary government approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

C. Name and Place of Business. Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

13. RELIANCE. I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain the Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guarantied hereby, and from any loan and/or financial accommodations resulting in the creation of other Debt guarantied hereby, and that this Guaranty is given for a business purpose. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion or the opinion of the directors or officers of my business, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable even when you without regard to the receipt, nature or value of any such benefits.

14. APPLICABLE LAW. This Guaranty is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

15. AMENDMENT, INTEGRATION AND SEVERABILITY. This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

16. ASSIGNMENT. If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

17. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

19. CREDIT INFORMATION. I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

20. SIGNATURES. By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

SCHMIDT DEVELOPMENT CORP.
By
DOUGLAS W. SCHMIDT, SECRETARY
By
DAVID L. SCHMIDT, PRESIDENT

©1996 Bankers Systems, Inc., St. Cloud, MN Express

RICHARD A. MERRILL
DARRELL A. JENSEN
JEFFREY S. JOHNSON
RUSSELL H. CROWDER
JON P. ERICKSON
THOMAS P. MALONE
MICHAEL F. HURLEY
DOUGLAS G. SAUTER
HERMAN L. TALLE
CHARLES M. SEYKORA
DANIEL D. GANTER, JR.
BEVERLY K. DODGE
JAMES D. HOEFT
*JOAN M. QUADE
*JOHN T. BUCHMAN

* Also Licensed in Wisconsin

SCOTT M. LEPAK
STEVEN G. THORSON
ELIZABETH A. SCHADING
WILLIAM F. HUEFNER
BRADLEY A. KLETSCHER
DOUGLAS J. DEHN
KRISTI R. RILEY
WILLIAM D. SIEGEL
TIMOTHY D. ERB
KAREN K. KURTH
ANGELA M. SAMEC
SUSAN E. SHEELY
ADRIEL B. VILLARREAL
KIP R. PETERSON
THOMAS J. KETTLESON
KRISTIN N. BLENKUSH
TAMMY J. SCHEMMEL
SUSAN E. TEGT



# Barna, Guzy & Steffen, Ltd.

ATTORNEYS AT LAW
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433-5894
(763) 780-8500   FAX (763) 780-1777
1-800-422-3486   www.bgs.com

*Writer's Direct Line: (763) 783-5117*
*Internet E-Mail Address: mhurley@bgs.com*

## DEFAULT NOTICE

## THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

November 29, 2010

**VIA U.S. MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

F. H. Schmidt, Inc.
Attn: Douglas W. Schmidt, President
109 Highway 55 West
Buffalo, MN 55313



EXHIBIT
13

RE:     **Loan No. 1034554**
        **$100,000.00 Promissory Note dated May 9, 2004, as amended ("Note")**
        **Our File No. 61673-003**

Dear Mr. Schmidt:

The undersigned has been retained by KleinBank (the "Bank") in connection with Loan No. 1034554 from the Bank to F. H. Schmidt, Inc., with an origination date of May 9, 2004. This letter is to notify you that you are in default under the terms and conditions of the above-described Note, and that the default must be cured pursuant to the terms and conditions of this letter.

1.  NATURE OF DEFAULT.  You have failed to pay the Note in full on its maturity date of August 1, 2009.  KleinBank demands payment in full of all delinquent amounts of principal, interest, and late fees, as provided in Section 2 of this letter.

2.  AMOUNT DUE AND ACTION REQUIRED: AS OF THE DATE OF THIS LETTER, THE OUTSTANDING PRINCIPAL BALANCE, INTEREST AND LATE FEES IS **$107,524.98.** THE PER DIEM INTEREST ON THE OUTSTANDING BALANCE IS $14.58. BECAUSE OF INTEREST AND OTHER CHARGES THAT MAY VARY

FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR PAYMENT, IN WHICH EVENT WE WILL INFORM YOU BEFORE ACCEPTING YOUR PAYMENT. FOR FURTHER INFORMATION, WRITE THE UNDERSIGNED OR CALL ANN SMITH AT 952-467-5254.

3. <u>DATE BY WHICH PAYMENT MUST BE MADE:</u> Lender must receive the entire past due amount owed to Lender no later than December 15, 2010. Payment in full must be made in cash or certified funds. Send payment to the following address:

> KleinBank
> 3455 Plymouth Boulevard
> Plymouth, MN 55447

4. <u>CONSEQUENCES OF FAILURE TO MAKE PAYMENT:</u> Your failure to comply with the requirements of this letter on or before December 15, 2010, will result in acceleration of the Note, and may result in the commencement of legal proceedings by the Bank, including but not limited to foreclosure of its Security Agreement, and enforcement of the Guaranties of David L. Schmidt, Douglas W. Schmidt, Schmidt Builders of Buffalo, Inc., a Minnesota corporation, Schmidt Development Corp., a Minnesota corporation, Schmidt Land Co., a Minnesota corporation.

5. <u>ATTORNEY'S FEES:</u> Under the Note, you are obligated to reimburse the Lender for all expenses incurred in pursuing its remedies, including reasonable attorney's fees. Such expenses will be added to your obligations under the Note.

6. <u>RIGHT TO BRING COURT ACTION:</u> You have the right to bring court action to assert the nonexistence of a default or any other defense that you may have to enforcement of the Note.

Questions regarding this letter should be directed to the undersigned or Ann Smith at (952) 467-5254.

Sincerely,

BARNA, GUZY & STEFFEN, LTD.

Michael F. Hurley

cc:    Ann Smith, KleinBank

THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

THE RIGHT TO VERIFICATION OF THE DEBT AND IDENTITY OF THE
ORIGINAL CREDITOR WITHIN THE TIME PROVIDED BY LAW IS NOT
AFFECTED BY THIS ACTION.

513070_1

RICHARD A. MERRILL
DARRELL A. JENSEN
JEFFREY S. JOHNSON
RUSSELL H. CROWDER
JON P. ERICKSON
THOMAS P. MALONE
MICHAEL F. HURLEY
DOUGLAS G. SAUTER
HERMAN L. TALLE
CHARLES M. SEYKORA
DANIEL D. GANTER, JR.
BEVERLY K. DODGE
JAMES D. HOEFT
*JOAN M. QUADE
*JOHN T. BUCHMAN

* Also Licensed in Wisconsin

SCOTT M. LEPAK
STEVEN G. THORSON
ELIZABETH A. SCHADING
WILLIAM F. HUERNER
BRADLEY A. KLETSCHER
DOUGLAS J. DEHN
KRISTI R. RILEY
WILLIAM D. SIEGEL
TIMOTHY D. ERB
KAREN K. KURTH
ANGELA M. SAMEC
SUSAN E. SHEELY
ADRIEL B. VILLARREAL
KIP R. PETERSON
THOMAS J. KETTLESON
KRISTIN N. BLENKUSH
TAMMY J. SCHEMMEL
SUSAN E. TEGT



# Barna, Guzy & Steffen, Ltd.

ATTORNEYS AT LAW
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433-5894
(763) 780-8500   FAX (763) 780-1777
1-800-422-3486   www.bgs.com

*Writer's Direct Line: (763) 783-5117*
*Internet E-Mail Address:  mhurley@bgs.com*

November 29, 2010

**VIA U.S. MAIL AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Schmidt Development Corp.
Attn:  David L. Schmidt, President
109 Highway 55 West
Buffalo, MN  55313

Schmidt Land Co.
Attn:  David L. Schmidt, President
109 Highway 55 West
Buffalo, MN  55313

Douglas W. Schmidt
5951 – 23rd Street N.E.
Buffalo, MN  55313

David L. Schmidt
5955 – 23rd Street N.E.
Buffalo, MN  55313

Schmidt Builders of Buffalo, Inc.
Attn:  Dale F. Schmidt, President
109 Highway 55 West
Buffalo, MN  55313



EXHIBIT
14

RE:    **Borrower:  F. H. Schmidt, Inc.
Loan No. 1034554
$100,000.00 Promissory Note dated May 9, 2004, as amended ("Note")
Our File No. 61673-003**

Dear Gentlemen:

This letter is to inform you that F. H. Schmidt, Inc., a Minnesota corporation has defaulted under the above-referenced Note.  A copy of the default letter sent to F. H. Schmidt, Inc. is enclosed setting forth the nature of the default, the amount due, and the action required to cure the default.  Pursuant to your Guaranty, the Lender hereby demands that you, as Guarantor, cure the default pursuant to the terms and conditions of the above-referenced Guaranty.  The default must be cured no later than December 15, 2010.

If you fail to cure this default, KleinBank will pursue all remedies it has against you, including, but not limited to, enforcement of the above-referenced Guaranty.

Sincerely,

BARNA, GUZY & STEFFEN, LTD.

Michael F. Hurley

MFH/mmp
Enclosure
Cc:    Ann Smith, KleinBank

**THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

513073_1

RICHARD A. MERRILL
DARRELL A. JENSEN
JEFFREY S. JOHNSON
RUSSELL H. CROWDER
JON P. ERICKSON
THOMAS P. MALONE
MICHAEL F. HURLEY
DOUGLAS G. SAUTER
HERMAN L. TALLE
CHARLES M. SEYKORA
DANIEL D. GANTER, JR.
BEVERLY K. DODGE
JAMES D. HOEFT
*JOAN M. QUADE
*JOHN T. BUCHMAN

* Also Licensed in Wisconsin

SCOTT M. LEPAK
STEVEN G. THORSON
ELIZABETH A. SCHADING
WILLIAM F. HUEFNER
BRADLEY A. KLETSCHER
DOUGLAS J. DEHN
KRISTI R. RILEY
WILLIAM D. SIEGEL
TIMOTHY D. ERB
KAREN K. KURTH
ANGELA M. SAMEC
SUSAN E. SHEELY
ADRIEL B. VILLARREAL
KIP R. PETERSON
THOMAS J. KETTLESON
KRISTIN N. BLENKUSH
TAMMY J. SCHEMMEL
SUSAN E. TEGT



# BGS

## Barna, Guzy & Steffen, Ltd.

ATTORNEYS AT LAW

400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433-5894
(763) 780-8500  FAX (763) 780-1777
1-800-422-3486  www.bgs.com

*Writer's Direct Line: (763) 783-5117*
*Internet E-Mail Address: mhurley@bgs.com*

## DEFAULT NOTICE

## THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

November 29, 2010

**VIA U.S. MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

F. H. Schmidt, Inc.
Attn: Douglas W. Schmidt, President
109 Highway 55 West
Buffalo, MN 55313

RE:    **Loan No. 1034554**
       **$100,000.00 Promissory Note dated May 9, 2004, as amended ("Note")**
       **Our File No. 61673-003**

Dear Mr. Schmidt:

The undersigned has been retained by KleinBank (the "Bank") in connection with Loan No. 1034554 from the Bank to F. H. Schmidt, Inc., with an origination date of May 9, 2004. This letter is to notify you that you are in default under the terms and conditions of the above-described Note, and that the default must be cured pursuant to the terms and conditions of this letter.

1.   <u>NATURE OF DEFAULT</u>. You have failed to pay the Note in full on its maturity date of August 1, 2009. KleinBank demands payment in full of all delinquent amounts of principal, interest, and late fees, as provided in Section 2 of this letter.

2.   <u>AMOUNT DUE AND ACTION REQUIRED:</u> AS OF THE DATE OF THIS LETTER, THE OUTSTANDING PRINCIPAL BALANCE, INTEREST AND LATE FEES IS $107,524.98. THE PER DIEM INTEREST ON THE OUTSTANDING BALANCE IS $14.58. BECAUSE OF INTEREST AND OTHER CHARGES THAT MAY VARY

FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR PAYMENT, IN WHICH EVENT WE WILL INFORM YOU BEFORE ACCEPTING YOUR PAYMENT. FOR FURTHER INFORMATION, WRITE THE UNDERSIGNED OR CALL ANN SMITH AT 952-467-5254.

3. <u>DATE BY WHICH PAYMENT MUST BE MADE:</u> Lender must receive the entire past due amount owed to Lender no later than December 15, 2010. Payment in full must be made in cash or certified funds. Send payment to the following address:

   KleinBank
   3455 Plymouth Boulevard
   Plymouth, MN 55447

4. <u>CONSEQUENCES OF FAILURE TO MAKE PAYMENT:</u> Your failure to comply with the requirements of this letter on or before December 15, 2010, will result in acceleration of the Note, and may result in the commencement of legal proceedings by the Bank, including but not limited to foreclosure of its Security Agreement, and enforcement of the Guaranties of David L. Schmidt, Douglas W. Schmidt, Schmidt Builders of Buffalo, Inc., a Minnesota corporation, Schmidt Development Corp., a Minnesota corporation, Schmidt Land Co., a Minnesota corporation.

5. <u>ATTORNEY'S FEES:</u> Under the Note, you are obligated to reimburse the Lender for all expenses incurred in pursuing its remedies, including reasonable attorney's fees. Such expenses will be added to your obligations under the Note.

6. <u>RIGHT TO BRING COURT ACTION:</u> You have the right to bring court action to assert the nonexistence of a default or any other defense that you may have to enforcement of the Note.

Questions regarding this letter should be directed to the undersigned or Ann Smith at (952) 467-5254.

Sincerely,

BARNA, GUZY & STEFFEN, LTD.

Michael F. Hurley

cc:    Ann Smith, KleinBank

THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

THE RIGHT TO VERIFICATION OF THE DEBT AND IDENTITY OF THE ORIGINAL CREDITOR WITHIN THE TIME PROVIDED BY LAW IS NOT AFFECTED BY THIS ACTION.

513070_1

everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

BARNA, GUZY & STEFFEN, LTD.

Dated: ___2/7___, 2011     By: _____

Bradley A. Kletscher, #239355
Tammy J. Schemmel, #0339325
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433
(763) 780-8500
Attorney for Plaintiff KleinBank

RICHARD A. MERRILL
DARRELL A. JENSEN
JEFFREY S. JOHNSON
RUSSELL H. CROWDER
JON P. ERICKSON
THOMAS P. MALONE
MICHAEL F. HURLEY
DOUGLAS G. SAUTER
HERMAN L. TALLE
CHARLES M. SEYKORA
DANIEL D. GANTER, JR.
BEVERLY K. DODGE
JAMES D. HOEFT
*JOAN M. QUADE
*JOHN T. BUCHMAN

* Also Licensed in Wisconsin



## Barna, Guzy & Steffen, Ltd.

ATTORNEYS AT LAW
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433-5894
(763) 780-8500   FAX (763) 780-1777
1-800-422-3486   www.bgs.com

SCOTT M. LEPAK
STEVEN G. THORSON
ELIZABETH A. SCHADING
WILLIAM F. HUEFNER
BRADLEY A. KLETSCHER
DOUGLAS J. DEHN
KRISTI R. RILEY
WILLIAM D. SIEGEL
TIMOTHY D. ERB
KAREN K. KURTH
ANGELA M. SAMEC
SUSAN E. SHEELY
ADRIEL B. VILLARREAL
KIP R. PETERSON
THOMAS J. KETTLESON
KRISTIN N. BLENKUSH
TAMMY J. SCHEMMEL
SUSAN E. TEGT

*Writer's Direct Line: (763) 783-5113*
*E-Mail Address:  bkletscher@bgs.com*

February 24, 2011

F. H. Schmidt, Inc.                          Schmidt Builder's of Buffalo, Inc.
109 Highway 55 West                          109 Highway 55 West
Buffalo, MN  55313                           Buffalo, MN  55313

Schmidt Development Corporation              Schmidt Land Co.
109 Highway 55 West                          109 Highway 55 West
Buffalo, MN  55313                           Buffalo, MN  55313

David L. Schmidt                             Douglas W. Schmidt
5955 23rd Street N.E.                         5951 23rd Street N.E.
Buffalo, MN  55313                           Buffalo, MN  55313

Carroll Distributing & Construction Supply Inc.
7540 – 4th Avenue
Lino Lakes, MN 55014

RE:    KleinBank v. F. H. Schmidt, Inc., David L. Schmidt, Douglas W. Schmidt, Schmidt Land
       Co., Schmidt Builders of Buffalo, Inc., and Schmidt Development Corporation
       Our File No. 61673-012
       Court File No: 86-CV-11-856

Dear Parties:

Enclosed and personally served upon you in the above-entitled matter, please find:

1. Notice of Motion and Motion for Replevin;
2. Memorandum of Law in Support of Motion for Replevin;
3. Affidavit of Tammy J. Schemmel;
4. Findings of Fact, Conclusions of Law and Order.

Sincerely,

BARNA, GUZY & STEFFEN, LTD.

Bradley A. Kletscher
BAK/mmk

Enclosures
cc:    KleinBank

An EOE/AA Employer
Celebrating 70 Years of Legal Service

RICHARD A. MERRILL
DARRELL A. JENSEN
JEFFREY S. JOHNSON
RUSSELL H. CROWDER
JON P. ERICKSON
THOMAS P. MALONE
MICHAEL F. HURLEY
DOUGLAS G. SAUTER
HERMAN L. TALLE
CHARLES M. SEYKORA
DANIEL D. GANTER, JR.
BEVERLY K. DODGE
JAMES D. HOEFT
*JOAN M. QUADE
*JOHN T. BUCHMAN

* Also Licensed in Wisconsin



## Barna, Guzy & Steffen, Ltd.

ATTORNEYS AT LAW
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433-5894
(763) 780-8500   FAX (763) 780-1777
1-800-422-3486   www.bgs.com

SCOTT M. LEPAK
STEVEN G. THORSON
ELIZABETH A. SCHADING
WILLIAM F. HUEFNER
BRADLEY A. KLETSCHER
DOUGLAS J. DEHN
KRISTI R. RILEY
WILLIAM D. SIEGEL
TIMOTHY D. ERB
KAREN K. KURTH
ANGELA M. SAMEC
SUSAN E. SHEELY
ADRIEL B. VILLARREAL
KIP R. PETERSON
THOMAS J. KETTLESON
KRISTIN N. BLENKUSH
TAMMY J. SCHEMMEL
SUSAN E. TEGT

*Writer's Direct Line: (763) 783-5113*
*E-Mail Address:  bkletscher@bgs.com*

February 24, 2011

Court Administrator
Wright County Government Center
Ten Second Street NW
Buffalo, MN  55313

RE:    KleinBank v. F. H. Schmidt, Inc., David L. Schmidt, Douglas W. Schmidt, Schmidt
       Land Co., Schmidt Builder's of Buffalo, Inc. and Schmidt Development Corporation
       Our File No. 61673-012
       Court File No: 86-CV-11-856

Dear Sir/Madam:

Enclosed for filing in the above-entitled matter, please find:

        1.  Notice of Motion and Motion for Replevin;
        2.  Memorandum of Law in Support of Motion for Replevin;
        3.  Affidavit of Tammy J. Schemmel; and
        4.  Findings of Fact, Conclusions of Law and Order.

Also enclosed is our check in the amount of $100.00 for the filing fee.
Sincerely,
BARNA, GUZY & STEFFEN, LTD.

Bradley A. Kletscher
BAK/hmk

Enclosure
cc:    KleinBank
       F. H. Schmidt, Inc.
       David L. Schmidt
       Douglas W. Schmidt
       Schmidt Land Co.
       Schmidt Builders of Buffalo, Inc.
       Schmidt Development Corporation
       Carroll Distributing & Construction Supply, Inc.

STATE OF MINNESOTA

COUNTY OF WRIGHT

DISTRICT COURT

TENTH JUDICIAL DISTRICT

CASE TYPE: CONTRACT

Court File No.86-CV-11-856

---

KleinBank,

Plaintiff,

vs.

**AMENDED SUMMONS**

F.H. Schmidt, Inc., David L. Schmidt, Douglas
W. Schmidt, Schmidt Land Co., Schmidt
Builders of Buffalo, Inc., Schmidt Development
Corporation, and Carroll Distributing &
Construction Supply, Inc.

Defendants.

---

THIS SUMMONS IS DIRECTED TO: **DEFENDANTS ABOVE-NAMED.**

**1. YOU ARE BEING SUED.** This Plaintiff has started a lawsuit against you. The
Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away.
They are official papers that affect your rights. You must respond to this lawsuit even though it
may not yet be filed with the Court and there may be no court file number on this summons.

**2. YOU MUST REPLY WITHIN 10 DAYS TO PROTECT YOUR RIGHTS.** You
must give or mail to the person who signed this summons **a written response** called an Answer
within 10 days of the date on which you received this Summons. You must send a copy of your
Answer to the person who signed this summons located at:

BARNA, GUZY & STEFFEN, LTD.
400 Northtown Financial Plaza
200 Coon Rapids Blvd.
Minneapolis, MN 55433

**3. YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response
to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with
each paragraph of the Complaint. If you believe the Plaintiff should not be given everything
asked for in the Complaint, you must say so in your Answer.

**4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN
RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS
SUMMONS.** If you do not answer within 20 days, you will lose this case. You will not get to

tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

BARNA, GUZY & STEFFEN, LTD.

Dated: ___2/24___, 2011

By: _____
Bradley A. Kletscher, #239355
Tammy J. Schemmel, #0339325
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433
(763) 780-8500
Attorney for Plaintiff KleinBank

STATE OF MINNESOTA                                          DISTRICT COURT

COUNTY OF WRIGHT                               TENTH JUDICIAL DISTRICT
                                                          Case Type: Contract

---

KleinBank,

                                              Court File No. 86-CV-11-856
            Plaintiff,

v.                                            AMENDED COMPLAINT

F.H. Schmidt, Inc., David L. Schmidt,
Douglas W. Schmidt, Schmidt Land Co.,
Schmidt Builders of Buffalo, Inc.,
Schmidt Development Corporation, and
Carroll Distributing & Construction Supply, Inc.,

            Defendants.

---

Plaintiff KleinBank ("Plaintiff"), for its claims against Defendants F.H. Schmidt, Inc.,

David L. Schmidt, Douglas W. Schmidt, Schmidt Land Co., Schmidt Builders of Buffalo, Inc.,

Schmidt Development Corporation, and Carroll Distributing & Supply, Inc. ("Defendants"),

states and alleges as follows:

1.    THE PARTIES:

      1.1.    Plaintiff KleinBank is a state bank with offices located at 1550 Audubon Road,

Chaska, Minnesota 55318.

      1.2.    Defendant F.H. Schmidt, Inc. ("F.H. Schmidt") is a Minnesota corporation with

offices located at 109 Highway 55 West, Buffalo, Minnesota 55313.

      1.3.    Defendant Schmidt Development Corporation ("Schmidt Development") is a

Minnesota corporation with offices located at 109 Highway 55 West, Buffalo, Minnesota 55313.

      1.4.    Defendant Schmidt Builders of Buffalo, Inc. ("Schmidt Builders") is a Minnesota

corporation with offices located at 109 Highway 55 West, Buffalo, Minnesota 55313.

1

1.5.  Defendant Schmidt Land Co. ("Schmidt Land") is a Minnesota corporation with offices located at 109 Highway 55 West, Buffalo, Minnesota 55313.

1.6.  Defendants Douglas W. Schmidt is an individual residing at 5951 – 23rd Street N.E., Buffalo, Minnesota 55313.

1.7.  Defendants David L. Schmidt is an individual residing at 5955 – 23rd Street N.E., Buffalo, Minnesota 55313.

1.8.  Defendant Carroll Distributing & Construction Supply, Inc. ("Carroll Distributing") is an Iowa corporation with offices located at Ottumwa, Iowa 52501. Carroll Distributing has a registered office located at 7540 4th Avenue, Lino Lakes, Minnesota 55014.

2.  DOCUMENTS REGARDING LOAN NO. 1034554:

2.1.  On or about May 9, 2004, Defendant F.H. Schmidt executed a Promissory Note (Commercial – Revolving Draw) ("Promissory Note") to Plaintiff in the amount of $100,000. Attached hereto as **Exhibit 1** is a true and correct copy of the Promissory Note.

2.2.  The Promissory Note is secured by guaranties executed by Defendants Douglas W. Schmidt and David L. Schmidt in favor of Plaintiff.

2.3.  On or about June 2, 2004, Douglas W. Schmidt executed a Guaranty for the benefit of Plaintiff. Attached hereto as **Exhibit 2** is a true and correct copy of the Douglas W. Schmidt Guaranty.

2.4.  On or about June 2, 2004, David L. Schmidt executed a Guaranty for the benefit of Plaintiff. Attached hereto as **Exhibit 3** is a true and correct copy of the David L. Schmidt Guaranty.

2.5.  On or about August 10, 2007, Defendant F.H. Schmidt executed a Commercial Loan Agreement in favor of Plaintiff in the amount of $100,000. Attached hereto as **Exhibit 4** is

2

a true and correct copy of the Commercial Loan Agreement.

2.6. On or about August 10, 2007, as security for the $100,000 Commercial Loan Agreement, Defendant F.H. Schmidt executed a Security Agreement. A true and correct copy of the Security Agreement is attached hereto as **Exhibit 5**.

2.7. Defendant F.H. Schmidt filed a UCC financing statement covering all inventory, equipment, accounts and other rights to payment, and general intangibles. A true and correct copy of the UCC Financing Statement is attached hereto as **Exhibit 6**.

2.8. On or about July 22, 2008, Defendant F.H. Schmidt executed a Promissory Note (Commercial – Revolving Draw) Renewal Note ("Promissory Note Renewal") to Plaintiff in the amount of $100,000. The Promissory Note had been renewed several times before the July 22, 2008 renewal. Attached hereto as **Exhibit 7** is a true and correct copy of the Promissory Note Renewal.

2.9. The Promissory Note Renewal is secured by guaranties executed by Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development in favor of Plaintiff.

2.10. On or about July 22, 2008, Douglas W. Schmidt executed a Guaranty for the benefit of Plaintiff. Attached hereto as **Exhibit 8** is a true and correct copy of the Douglas W. Schmidt Guaranty.

2.11. On or about July 22, 2008, David L. Schmidt executed a Guaranty for the benefit of Plaintiff. Attached hereto as **Exhibit 9** is a true and correct copy of the David L. Schmidt Guaranty.

2.12. On or about July 22, 2008, Schmidt Land executed a Guaranty for the benefit of Plaintiff. Attached hereto as **Exhibit 10** is a true and correct copy of the Schmidt Land

3

Guaranty.

2.13. On or about July 22, 2008, Schmidt Builders executed a Guaranty for the benefit of Plaintiff. Attached hereto as **Exhibit 11** is a true and correct copy of the Schmidt Builders Guaranty.

2.14. On or about July 22, 2008, Schmidt Development executed a Guaranty for the benefit of Plaintiff. Attached hereto as **Exhibit 12** is a true and correct copy of the Schmidt Development Guaranty.

2.15. On or about April 7, 2010, Carroll Distributing filed a UCC Financing Statement covering "all of the debtor's inventory, general intangibles, equipment, now owned or hereafter acquired, accounts, now existing or hereafter arising, together with interest, all chattel paper, documents, and instruments relating to accounts: equipment, concrete form systems, supplies, parts and accessories, sold to debtor by secured party, company assets or proceeds of such assets."

2.16. Under the terms of the Promissory Note, as amended, Defendant F.H. Schmidt agreed to pay Plaintiff the full principal amount of $100,000, plus interest from the date of disbursement on the unpaid outstanding principal balance. Specifically, Defendant F.H. Schmidt agreed to make monthly payments of all accrued interest on the balance outstanding, beginning on September 1, 2008. A final payment of the entire outstanding balance of principal and interest was due on August 1, 2009.

3. DEFAULT ON LOAN NO. 1034554:

3.1. On November 29, 2010, Plaintiff issued a letter to Defendant F.H. Schmidt giving it notice of default on the Promissory Note, as amended, and giving Defendant F.H. Schmidt notice that failure to pay the outstanding principal balance, interest and late fees due and owing

4

under the Promissory Note, as amended, may result in commencement of legal action by Plaintiff, including, but not limited to, foreclosure of its security agreement and enforcement of the guaranties. Attached hereto as **Exhibit 13** is a true and correct copy of the November 29, 2010 letter to Defendant F.H. Schmidt.

3.2. On November 29, 2010, Plaintiff issued letters to Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development informing them that Defendant F.H. Schmidt defaulted under the Promissory Note, as amended, and giving each of the Defendant Guarantors notice that failure to cure the default pursuant to the terms of the Guaranty may result in enforcement of the Guaranty. Attached hereto as **Exhibit 14** is a true and correct copy of the November 29, 2010 letter to Defendant Guarantors.

3.3. Despite due demand, Defendant F.H. Schmidt has failed and refused to pay the amount owing on the Promissory Note, as amended, to Plaintiff.

3.4. Despite due demand, Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development have failed and refused to cure Defendant F.H. Schmidt's default pursuant to the terms of the Guaranties.

3.5. The amount owing on the Promissory Note, as amended, as of November 29, 2010 was $107,524.98, which included interest and late fees. The per diem interest on the outstanding balance is $14.58.

3.6 Plaintiff is entitled to its costs of collecting the notes, including reasonable attorneys' fees under the Promissory Note, as amended.

3.7 Plaintiff has and will incur attorneys' fees and costs in collecting on the Promissory Note Renewal.

## COUNT I

4. BREACH OF THE PROMISSORY NOTE, AS AMENDED:

4.1. The allegations of paragraphs 1 through 3 are incorporated herein by reference as if set forth fully herein.

4.2. Defendant F.H. Schmidt entered into the Promissory Note, as amended, with Plaintiff.

4.3. Defendant F.H. Schmidt breached the terms of the Promissory Note, as amended.

4.4. As a direct and proximate cause of Defendant F.H. Schmidt's breach of the Promissory Note, as amended, Plaintiff has been damaged in an amount of $107,524.98, plus interest and late fees.

4.5. Pursuant to the terms of the Promissory Note, as amended, Plaintiff is entitled to an award of all reasonable attorneys' fees and legal expense incurred in collecting on the Promissory Note, as amended.

## COUNT II

5. BREACH OF GUARANTY:

5.1. Plaintiff realleges the matters set forth above in Paragraphs 1 through 4.

5.2. Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development entered into Guaranties with Plaintiff wherein they guaranteed the payment of the Promissory Note, as amended.

5.3. Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development have breached the terms of the Guaranties.

5.4. As a result of Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land,

6

Schmidt Builders, and Schmidt Development's breach of the Guaranties, Plaintiff has been damaged in an amount of $107,524.98, plus interest and late fee, to be determined with greater certainty at the time of trial.

## COUNT III

6. BREACH OF SECURITY AGREEMENT:

6.1. Plaintiff realleges the matters set forth above in Paragraphs 1 through 5.

6.2. Defendant F.H. Schmidt is in breach of the security agreement for failing to pay its obligations to Plaintiff when due.

6.3. Plaintiff's security interest as described in Exhibits 5 and 6 has been perfected by the filing of a UCC Financing Statement with the Secretary of State for the State of Minnesota. Plaintiff has a first security interest in all inventory, equipment, accounts and other rights to payment, and general intangibles.

6.4. Pursuant to the Security Agreement and Minn. Stat. § 336.9-608-610, upon a default, Plaintiff may take possession of the collateral, with or without judicial process, and may sell the collateral, and apply the proceeds of said sale to Defendant F.H. Schmidt's indebtedness to Plaintiff.

6.5. Plaintiff is entitled to an Order granting Plaintiff possession of the collateral, or in the alternative, to an Order directing the Sheriff to seize the collateral and to sell the same with the proceeds applied to the indebtedness.

## COUNT IV

7. REPLEVIN:

7.1. Plaintiff realleges the matters set forth above in Paragraphs 1 through 5.

7

7.2.   The security interest described in Paragraph 2 has been perfected by the filing of a UCC Financing Statement with the Minnesota Secretary of State.

7.3.   Plaintiff is entitled to take possession of and sell the collateral, and apply the proceeds of said sale to Defendant F.H. Schmidt's indebtedness to Plaintiff.

7.4.   Plaintiff is entitled to an Order requiring that Defendant F.H. Schmidt immediately turn over collateral to Plaintiff, or in the alternative, to an Order directing the Sheriff to seize the collateral and to sell the same with the proceeds applied to the indebtedness.

**WHEREFORE,** Plaintiff prays the Court:

1.   For an Order finding that Plaintiff has a first lien on the collateral described in Exhibits 5 and 6 to the Complaint and an Order finding Plaintiff is entitled to possession and sale of the collateral.

2.   For judgment in an amount of $107,524.98, plus interest and late fee, to be determined with greater certainty at the time of trial against Defendant F.H. Schmidt for breach of the Promissory Note, as amended.

3.   Judgment against Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development for any deficiency in accordance with each Guaranty.

4.   For an award of costs, disbursements and reasonable attorneys' fees against Defendants F.H. Schmidt, Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development as may be allowed by law.

5.   For such other and further relief as the Court deems just and equitable.

Dated: 2/24/11

BARNA, GUZY & STEFFEN LTD.

By:

Bradley A. Kletscher, #239355
Tammy J. Schemmel, #0339325
200 Coon Rapids Boulevard
400 Northtown Financial Plaza
Minneapolis, MN 55433
(763)780-8500
Attorneys for Plaintiff KleinBank

## ACKNOWLEDGEMENT

The undersigned acknowledges pursuant to Minn. Stat. § 549.211 that costs, disbursements and reasonable attorneys' fees may be awarded against the party who asserts this pleading if the pleading is asserted without a good faith basis.

Dated: 2/24/11

BARNA, GUZY & STEFFEN LTD.

By: Bradley A. Kletscher, #239355

9

STATE OF MINNESOTA

COUNTY OF WRIGHT

DISTRICT COURT

TENTH JUDICIAL DISTRICT
Case Type: Contract

---

KleinBank,

Plaintiff,

vs.

F.H. Schmidt, Inc., David L. Schmidt,
Douglas W. Schmidt, Schmidt Land Co.,
Schmidt Builders of Buffalo, Inc.,
Schmidt Development Corporation, and
Carroll Distributing & Construction Supply, Inc.

Defendants.

Court File No. 86-CV-11-856

**NOTICE OF MOTION AND
MOTION FOR REPLEVIN**

---

TO: DEFENDANTS F.H. SCHMIDT, INC., DAVID L. SCHMIDT, DOUGLAS W.
SCHMIDT, SCHMIDT LAND CO., SCHMIDT BUILDERS OF BUFFALO, INC.,
SCHMIDT DEVELOPMENT CORPORATION, AND CARROLL DISTRIBUTING &
CONSTRUCTION SUPPLY, INC.

### NOTICE OF MOTION

Please take notice that KleinBank ("Plaintiff") will bring a Motion for Replevin before the

Honorable Michele A. Davis, in the Wright County Government Center, 10 Second Street NW,

Buffalo, Minnesota 55313, on March 10, 2011 at 1:30 p.m. or as soon thereafter as counsel can be

heard to determine whether the Sheriff shall remove from your possession and deliver to Plaintiff all

accounts, equipment, general intangibles and inventory as described in the Security Agreement

attached to the Complaint as Exhibit 5. This motion is based upon all of the files, affidavits and

records on file with the Court herein.

You have a right to appear at this hearing on your own behalf or with an attorney. You will

have an opportunity to present defenses to Plaintiff's claims and to state reasons why the property

described in the Security Agreement should not be taken.

If the Court determines that Plaintiff has a right to have possession of the property while this lawsuit is pending, you may nevertheless keep the property until the lawsuit is decided if you file with the Court a surety bond in the amount of $161,287.47. This amount is one and one-half times the amount of the claim. If you believe the amount of the claim is overstated, you may ask the Court to lower it.

If you do not appear at the hearing, the Court has authority to issue an order directing that the property described in the Security Agreement be immediately taken from your possession.

## MOTION

Pursuant to Minnesota Statutes Section 565.21 et seq., Plaintiff moves the Court for an Order:

1. Finding that on or about August 10, 2007, Defendant executed a Security Agreement for adequate consideration.

2. Finding that Defendant granted Plaintiff a security interest in the inventory, accounts and other rights to payment, general intangibles, and equipment.

3. Finding that Plaintiff's security interests described above have been perfected by the filing of Financing Statements with the Minnesota Secretary of State.

4. Finding that Plaintiff's security interest is prior to and superior to all other security interest on the collateral.

5. Finding that Defendant is in default on the promissory note with KleinBank.

6. Ordering that Plaintiff is entitled to take possession of and sell the inventory, accounts and other rights to payment, general intangibles, and equipment as described more fully in the Security Agreement attached to the Complaint as Exhibit 5 and apply the proceeds of said sale to Defendant's indebtedness to Plaintiff.

7.     Ordering that Defendant must immediately turn over the inventory, accounts and other rights to payment, general intangibles, and equipment to Plaintiff. If Defendant does not comply, the Sheriff is directed to seize the collateral and to sell the same, the proceeds to be applied to the indebtedness.

8.     Ordering that if Defendant does not turn over the collateral to Plaintiff that Douglas W. Schmidt and David L. Schmidt must personally appear in Court on March 15, 2011 to identify the location of the collateral.

BARNA, GUZY & STEFFEN, LTD.

Dated: ___2/24/11___

By: _____
    Bradley A. Kletscher, #239355
    Tammy J. Schemmel, #0339325
    400 Northtown Financial Plaza
    200 Coon Rapids Boulevard
    Minneapolis, MN 55433
    Phone: (763) 780-8500
    Attorneys for Plaintiff

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF WRIGHT                              TENTH JUDICIAL DISTRICT
                                                      Case Type: Contract

———————————————————————

KleinBank,                                        Court File No. 86-CV-11-856

              Plaintiff,

vs.                                                  **MEMORANDUM OF LAW IN**
                                                     **SUPPORT OF MOTION FOR**
F.H. Schmidt, Inc., David L. Schmidt,                        **REPLEVIN**
Douglas W. Schmidt, Schmidt Land Co.,
Schmidt Builders of Buffalo, Inc.,
Schmidt Development Corporation, and
Carroll Distributing & Construction Supply, Inc.,

              Defendants.

———————————————————————

        Plaintiff KleinBank ("Plaintiff") submits the following Memorandum of Law in support

of its Motion for Replevin. Based on the following the Affidavit submitted, and the entire record

in this matter, Plaintiff requests that its Motion for Replevin be granted in its entirety.

### FACTUAL BACKGROUND

        The following Statement of Factual Background is submitted solely to aid the Court in

the consideration of the Motion for Replevin.

THE PARTIES

        Plaintiff KleinBank is a state bank with offices located at 1550 Audubon Road, Chaska,

Minnesota 55318. Defendant F.H. Schmidt, Inc. ("F.H. Schmidt") is a Minnesota corporation

with offices located at 109 Highway 55 West, Buffalo, Minnesota 55313. Defendant Schmidt

Development Corporation ("Schmidt Development") is a Minnesota corporation with offices

located at 109 Highway 55 West, Buffalo, Minnesota 55313. Defendant Schmidt Builders of

Buffalo, Inc. ("Schmidt Builders") is a Minnesota corporation with offices located at 109

1

Highway 55 West, Buffalo, Minnesota 55313. Defendant Schmidt Land Co. ("Schmidt Land") is a Minnesota corporation with offices located at 109 Highway 55 West, Buffalo, Minnesota 55313. Defendant Douglas W. Schmidt is an individual residing at 5951 – 23rd Street N.E., Buffalo, Minnesota 55313. Defendant David L. Schmidt is an individual residing at 5955 – 23rd Street N.E., Buffalo, Minnesota 55313. Defendant Carroll Distributing & Construction Supply, Inc. ("Carroll Distributing") is an Iowa corporation with offices located at Ottumwa, Iowa 52501. Carroll Distributing has a registered office located at 7540 4th Avenue, Lino Lakes, Minnesota 55014.

## LOAN DOCUMENTS

On or about May 9, 2004, Defendant F.H. Schmidt executed a Promissory Note (Commercial – Revolving Draw) ("Promissory Note") to Plaintiff in the amount of $100,000. (Schemmel Aff. Ex. 1). The Promissory Note is secured by guaranties executed by Defendants Douglas W. Schmidt and David L. Schmidt in favor of Plaintiff. (Schemmel Aff. Exs. 2, 3).

On or about August 10, 2007, Defendant F.H. Schmidt executed a Commercial Loan Agreement in favor of Plaintiff in the amount of $100,000. (Schemmel Aff. Ex. 4). On or about August 10, 2007, as security for the $100,000 Commercial Loan Agreement, Defendant F.H. Schmidt executed a Security Agreement. (Schemmel Aff. Ex. 5). Defendant F.H. Schmidt filed a UCC financing statement covering all inventory, equipment, accounts and other rights to payment, and general intangibles. (Schemmel Aff. Ex. 6).

On or about July 22, 2008, Defendant F.H. Schmidt executed a Promissory Note (Commercial – Revolving Draw) Renewal Note ("Promissory Note Renewal") to Plaintiff in the amount of $100,000. (Schemmel Aff. Ex. 7). The Promissory Note Renewal is secured by guaranties executed by Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land,

2

Schmidt Builders, and Schmidt Development in favor of Plaintiff. (Schemmel Aff. Exs. 8-12).

Under the terms of the Promissory Note, as amended, Defendant F.H. Schmidt agreed to pay Plaintiff the full principal amount of $100,000, plus interest from the date of disbursement on the unpaid outstanding principal balance. (Schemmel Aff. Ex. ). Specifically, Defendant F.H. Schmidt agreed to make monthly payments of all accrued interest on the balance outstanding, beginning on September 1, 2008. (Schemmel Aff. Ex. 7). A final payment of the entire outstanding balance of principal and interest was due on August 1, 2009. (Schemmel Aff. Ex. 7).

The purpose of the Commercial Loan Agreement was "Working Capital." (Schemmel Aff. Ex. 4). F.H. Schmidt's inventory, accounts and other rights to payment, general intangibles and equipment (the "Property") were collateral for the Commercial Loan Agreement. (Schemmel Aff. Ex. 5). The UCC financing statement was filed with the Minnesota Secretary of State on April 29, 2002 and continued on February 14, 2007. (Schemmel Aff. Ex. 6). On or about April 7, 2010, Carroll Distributing & Construction Supply, Inc. filed a UCC Financing Statement with the Minnesota Secretary of State covering "all of the debtor's inventory, general intangibles, equipment, now owned or hereafter acquired, accounts, now existing or hereafter arising, together with interest, all chattel paper, documents, and instruments relating to accounts: equipment, concrete form systems, supplies, parts and accessories, sold to debtor by secured party, company assets or proceeds of such assets." (Schemmel Aff. Ex. 15).

In a letter dated November 29, 2010, KleinBank informed F.H. Schmidt that it was in default under the Promissory Note, as amended, because it failed to pay the Promissory Note in full on its maturity dated of August 1, 2009. (Schemmel Aff. Ex. 13). The amount owing on the Promissory Note, as amended, as of November 29, 2010 was $107,524.98, which included

3

interest and late fees. (Schemmel Aff. Ex. 13). In the November 29, 2010 letter, KleinBank informed F.H. Schmidt that if it failed to make the required payment, then KleinBank may commence legal proceedings to foreclose its Security Agreement. (Schemmel Aff. Ex. 13). To date, F.H. Schmidt has not paid on the Commercial Loan Agreement, or provided the any collateral to KleinBank. (Schemmel Aff. ¶ 17).

## ARGUMENT

### I. THE COURT SHOULD ORDER REPLEVIN OF THE PROPERTY.

The Court should allow KleinBank to seize the Property. Minn. Stat. § 565.23 provides that "[a] claimant seeking to recover possession of property after service of a summons and complaint but prior to final judgment shall proceed by motion." Minn. Stat. § 565.23, subd. 1 (2010). The motion is to be accompanied by an affidavit setting forth the particular property sought to be recovered, the facts giving rise to Plaintiff's right to possession, the facts showing that Defendant is wrongfully detaining the property, the date and the amount of the original obligation, the amount which has been paid by Defendant, and the amount now owing to Plaintiff, a good faith approximation of the market value of property being claimed, and the debtor is to be given statutory notice of both the time and place of the hearing to consider the motion. Minn. Stat. § 565.23.

In addition, "[a]fter a hearing, the court shall order seizure of the property from respondent and delivery to claimant if claimant has demonstrated the probability of success on the merits entitling claimant to possession of the property . . . ." Minn. Stat. § 565.23, subd. 3. To protect the interest of the debtor after issuance of a replevin order, Minn. Stat. § 565.25, subd. 1, Plaintiff is required to post a bond in an amount equal to one and one-half (1.5) times the fair market value of the property seized. Upon the posting of such a bond and ground for

4

repossession, Minn. Stat. § 565.26, subd. 1, provides that an order for seizure may be issued, which shall identify the property to be seized, direct the Sheriff to seize the same, and specify that Plaintiff is authorized, immediately or after a specified reasonable period of time, to sell or otherwise dispose of the property pending final hearing on the merits.

Plaintiff is likely to succeed on the merits. A breach of contract exists when one party totally or partially fails to perform his obligations under the contract. Craigmile v. Sorenson, 80 N.W.2d 45 (1956); Wormsbecker v. Donovan Constr. Co., 76 N.W.2d 643 (1956); Associated Cinemas v. World Amusement Co., 276 N.W. 7 (1937); Rentz v. Hurst, 195 N.W. 771 (1923); McGuire v. J Neils Lumber Co., 107 N.W. 130 (1906). A breach by one party to a contract excuses performance of the other party. Hartung v. Billmeier, 66 N.W.2d 784 (1954); Buckey v. Indianhead Truck Line, 48 N.W.2d 534 (1951). Minnesota has adopted Article 9 of the UCC regarding security interests. See Minn. Stat. §§ 336.9-101. If an Article 9 security interest is perfected, that security interest is considered secure and takes priority over unsecured creditors. Minn. Stat. § 336.9-322(a)(2).

Plaintiff is likely to succeed on the merits, and as such, Plaintiff has a right to replevy the identified Property. Plaintiff was granted a security interest in the inventory, accounts and other rights to payment, general intangibles, and equipment of F.H. Schmidt. (Schemmel Aff. Exs. 5, 6). On or about August 10, 2007, Douglas W. Schmidt, as President and Treasurer of F.H. Schmidt, and David L. Schmidt, Chief Executive Officer and Secretary of F.H. Schmidt, signed a Commercial Loan Agreement for $100,000.00 with KleinBank along with a Security Agreement. (Schemmel Exs. 4, 5). Under the Security Agreement, the inventory, accounts and other rights to payment, general intangibles and equipment were collateral for all extension, renewals, refinancing, and modifications of Loan No. 1034554 in the amount of $100,000. (Schemmel Aff.

5

Ex. 5). KleinBank filed the UCC financing statement on April 29, 2002, thereby perfecting its security interest in the inventory, accounts and other rights to payment, general intangibles and equipment. (Schemmel Aff. Ex. 6). A security interest has priority over other creditors, including secured ones.

A default has occurred. Defendants have failed to make all required payments on the Commercial Loan Agreement. (Schemmel Aff. ¶ 17). This is a default under the Security Agreement. (Schemmel Aff. Ex. 5). Demand letters were sent by certified mail and first class mail to Defendants. (Schemmel Aff. Exs. 13, 14) No payments or collateral have been provided in response to these letters. (Schemmel Aff. ¶ 17). Despite reasonable demands for repayment of the outstanding indebtedness, Defendants remain in default. (Schemmel Aff. ¶ 17). The inventory, accounts and other rights to payment, general intangibles and equipment and personal guaranties of Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders, and Schmidt Development are the only collateral Plaintiff has for the Commercial Loan Agreement. (Schemmel Aff. Exs. 5, 8-12).

The amount owing on the Promissory Note, as amended, as of November 29, 2010 was $107,524.98, which included interest and late fees. (Schemmel Aff. Ex. 13). Plaintiff stands ready to post a surety bond to protect Defendants' interests in the amount of $161,287.47, or as ordered by the Court.

Plaintiff respectfully asks the Court to grant its Motion for Replevin, allowing it to recover its collateral in the manner provided by law.

### CONCLUSION

Plaintiff has a valid security interest in the inventory, accounts and other rights to payment, general intangibles and equipment. The amount owing on the Promissory Note, as

6

amended, as of November 29, 2010 was $107,524.98, which included interest and late fees. Plaintiff's security interest is a security interest, which takes priority over other secured and unsecured creditors. Plaintiff has shown its probability of success on the merits, as Defendant has failed to make payments on the Commercial Loan Agreement, which makes clear that any missed payment constitutes a default. Therefore, Plaintiff's Motion for Replevin should be granted.

BARNA, GUZY & STEFFEN, LTD.

Dated: 2/24/11

By: _____

Bradley A. Kletscher, #239355
Tammy J. Schemmel, #0339325
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433
Phone: (763) 780-8500
Attorneys for Plaintiff

STATE OF MINNESOTA

COUNTY OF WRIGHT

DISTRICT COURT

TENTH JUDICIAL DISTRICT

CASE TYPE: CONTRACT

Court File No.86-CV-11-856

KleinBank,

Plaintiff,

vs.

**AFFIDAVIT OF TAMMY J. SCHEMMEL**

F.H. Schmidt, Inc., David L. Schmidt, Douglas
W. Schmidt, Schmidt Land Co., Schmidt
Builders of Buffalo, Inc., Schmidt Development
Corporation, and Carroll Distributing &
Construction Supply, Inc.

Defendants.

Your Affiant, Tammy J. Schemmel, being first duly sworn on oath, deposes and states as

follows:

1.      I am an attorney duly licensed to practice in the State of Minnesota and an

Associate at the law firm of Barna, Guzy & Steffen, Ltd. I am one of the attorneys representing

the Plaintiff in the above-captioned action.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Promissory Note

(Commercial – Revolving Draw – Variable Rate) executed by F. H. Schmidt, Inc. dated May 9,

2004.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the personal Guaranty of

Douglas W. Schmidt dated June 2, 2004.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the personal Guaranty of

David L. Schmidt dated June 2, 2004.

5.        Attached hereto as Exhibit 4 is a true and correct copy of the Commercial Loan Agreement to KleinBank dated August 10, 2007.

6.        Attached hereto as Exhibit 5 is a true and correct copy of the Security Agreement dated August 10, 2007.

7.        Attached hereto as Exhibit 6 is a true and correct copy of the UCC Financing Statement dated April 29, 2002.

8.        Attached hereto as Exhibit 7 is a true and correct copy of the Promissory Note (Commercial – Revolving Draw) dated July 22, 2008.

9.        Attached hereto as Exhibit 8 is a true and correct copy of the Guaranty of Douglas W. Schmidt dated July 22, 2008.

10.        Attached hereto as Exhibit 9 is a true and correct copy of the Guaranty of David L. Schmidt dated July 22, 2008.

11.        Attached hereto as Exhibit 10 is a true and correct copy of the Guaranty of Schmidt Land Co. dated July 22, 2008.

12.        Attached hereto as Exhibit 11 is a true and correct copy of the Guaranty of Schmidt Builders of Buffalo, Inc. dated July 22, 2008.

13.        Attached hereto as Exhibit 12 is a true and correct copy of the Guaranty of Schmidt Development Corp. dated July 22, 2008.

14.        Attached hereto as Exhibit 13 is a true and correct copy of the Default Notice sent to F. H. Schmidt, Inc. dated November 29, 2010.

15.        Attached hereto as Exhibit 14 is a true and correct copy of the Default Letter sent to the Guarantors Douglas W. Schmidt, David L. Schmidt, Schmidt Land Co., Schmidt Builders of Buffalo, Inc. and Schmidt Development Corp. dated November 29, 2010.

16.     Attached hereto as Exhibit 15 is a true and correct copy of the UCC Financing Statement dated April 7, 2010 filed by Carroll Distributing & Construction Supply, Inc.

17.     KleinBank has not received any payments from F. H. Schmidt on the Commercial Loan Agreement, or provided any collateral to them. Defendants remain in default.

FURTHER YOUR AFFIANT SAYETH NOT.

_Tammy Schemmel_

Tammy J. Schemmel

Subscribed and sworn to before me
this 24th day of February, 2011.

_Mary M. Kislenger_

Notary Public

MARY M KISLENGER
Notary Public
Minnesota
My Commission Expires January 31, 2015

STATE OF MINNESOTA

COUNTY OF WRIGHT

DISTRICT COURT

TENTH JUDICIAL DISTRICT
Case Type: Contract

---

Klein Bank,

                              Plaintiff,

F.H. Schmidt, Inc., David L. Schmidt,
Douglas W. Schmidt, Schmidt Land Co.,
Schmidt Builders of Buffalo, Inc.,
Schmidt Development Corporation, and
Carroll Distributing & Construction Supply, Inc.

                              Defendants.

Court File No.86-CV-11-856

ANSWER OF DEFENDANT
F.H. SCHMIDT TO COMPLAINT

---

Defendant F. H. Schmidt, for its Answer to Plaintiff's Complaint herein, admits, denies, and

alleges as follows:

1.      Denies each allegation in the Plaintiff's Complaint except as herein admitted,

        Qualified, or as otherwise alleged.

2.      In response to paragraphs 1.1 through 1.7, admits the allegations therein.

3.      In response to paragraphs 2.1 through 2.15, Defendant is without sufficient

        information to admit or deny the allegations set forth therein and therefore deny said

        allegations

4.      In response to paragraph 3.1, Defendant denies that the letter referred to therein

        provided sufficient notice to Defendant F.H. Schmidt of the outstanding principal

        balance, interest and late fees due and owing under the Promissory Note, Defendant

        admits the remaining allegations contained in paragraph 3.1.

5.     In response to paragraph 3.2, Defendant is without sufficient information or belief to admit or deny whether Plaintiff issued letters to each of the Defendant guarantors. Defendant specifically denies that the letter referred to therein gave each of the Defendant Guarantors sufficient notice of the cure amount due pursuant to the terms of the Guaranty, Defendant admits the remaining allegations contained in paragraph 3.2.

6.     In response to paragraph 3.3, Defendant denies that there has been a due demand, and denies that Defendant was told the amount owed on the Promissory Note as alleged therein. Defendant lacks information or belief sufficient to admit or deny the amount of payments made or allegedly owed under the promissory note and therefore denies that it has not been paid.

7.     In response to paragraph 3.4 Defendant denies that there has been a due demand, and denies that Defendants Douglas W. Schmidt, David L. Schmidt, Schmidt Land, Schmidt Builders and Schmidt Development were told the amount owing on the Promissory Note or that they were told the sum or sums owed pursuant to the terms of the Guaranties, as alleged therein. Defendant further answers that it has no duty to cure based upon the failure to provide a proper due demand, and therefore denies the allegations relating thereto.

8.     In response to paragraph 3.5, Defendant is without sufficient information to admit or deny the allegations set forth therein and therefore denies said allegations.

9.     In response to paragraph 3.6, Defendant denies the allegations set forth therein.

10.    In response to paragraph 3.7, Defendant is without sufficient information to admit or deny the allegations set forth therein and therefore denies.

11. In response to paragraph 4.1, Defendant states no response is necessary, but to the extent a response is required refers to its responses to paragraphs 1 through 3 set forth above.

12. In response to paragraph 4.2, Defendant is without sufficient information to admit or deny the allegations set forth therein and, therefore, denies said allegations.

13. In response to paragraphs 4.3, 4.4, and 4.5, Defendant denies the allegations set forth therein.

14. In response to paragraph 5.1 Defendant states no response is necessary, but to the extent a response is required refers to its responses to paragraphs 1 through 4 set forth above.

15. In response to paragraph 5.2, Defendant is without sufficient information to admit or deny the allegations contained therein and therefore denies said allegations.

16. In response to paragraphs 5.3 and 5.4, Defendant denies the allegations set forth therein.

17. In response to paragraph 6.1 Defendant states no response is necessary, but to the extent a response is required refers to its responses to paragraphs 1 through 5 set forth above.

18. In response to paragraph 6.2, 6.3 and 6.5, Defendant denies the allegations set forth therein.

19. In response to paragraph 6.4, Defendant is without sufficient information to admit or deny the allegations set forth therein and therefore denies.

20. In response to paragraph 7.1 Defendant states no response is necessary, but to the extent a response is required refers to its responses to paragraphs 1 through 5 set forth above.

21. In response to paragraph 7.2, 7.3 and 7.4 Defendant denies the allegations set forth therein.

## ADDITIONAL MATTERS

1. As to all affirmative defenses, Defendant alleges that any sums owed to Plaintiff should be offset by the Plaintiff's land grab and interference with the Defendant and Defendant's Principals (Schmidts) contractual relations. Defendant alleges that Plaintiff preferred to foreclose rather than have loans paid off because (a) Plaintiff will collect insurance proceeds if it takes forecloses upon the land resulting in a windfall wherein Plaintiff collects money PLUS the land, and (b) if the Schmidts continue to own the properties, Plaintiff only receives the payments and does not get the land and/or the insurance proceeds. In furtherance of this preference, Plaintiff, among other things, refused to provide payoff sums when it had a duty to do so, thereby interfering with Defendant and Schmidts attempt to exercise their rights under Minnesota Law.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1. As a first and separate affirmative defense, Defendant alleges that Plaintiff is barred from any recovery by the doctrine of estoppel.

### SECOND AFFIRMATIVE DEFENSE

2. As a second and separate affirmative defense, Defendant alleges Plaintiff is barred from any recovery by the doctrine of waiver.

4

## THIRD AFFIRMATIVE DEFENSE

3. As a third and separate affirmative defense, Defendant alleges that Plaintiff is barred from recovery by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

4. As a fourth and separate affirmative defense, Defendant alleges that Plaintiff is barred from recovery by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

5. As a fifth and separate affirmative defense, Defendant alleges that to the extent Plaintiff has mitigated its damages, it has no damage.

## SIXTH AFFIRMATIVE DEFENSE

6. As a sixth and separate affirmative defense, Defendant alleges upon information and belief that Plaintiff failed to take reasonable steps to mitigate its damages, if any, and that its recovery, if any, should be reduced accordingly.

## SEVENTH AFFIRMATIVE DEFENSE

7. As an seventh and separate affirmative defense, Defendant alleges upon information and belief that Plaintiff commenced the proceedings against Defendant without reasonable cause and without a good faith belief that there was a justifiable controversy, thereby rendering Plaintiff liable for the costs incurred by Defendant in the defense of this action.

## EIGHTH AFFIRMATIVE DEFENSE

8. As an eighth seventh and separate affirmative defense, Defendant alleges upon information and belief that any and all alleged damage, loss or injury suffered or to be suffered by Plaintiff was and is due to causes beyond the control or responsibility of Defendant.

5

## NINTH AFFIRMATIVE DEFENSE

9.    As a ninth and separate affirmative defense, Defendant alleges that any alleged damages

suffered by Plaintiff, if any there be, were caused by Plaintiff, and, therefore, Plaintiff's

alleged damages, if any, should be offset in the sum equal to Plaintiff's contribution thereto.

## TENTH AFFIRMATIVE DEFENSE

10.    As tenth and separate affirmative defense, Defendant alleges upon information and belief that

Plaintiff lacks standing to assert the claims alleged.

## ELEVENTH AFFIRMATIVE DEFENSE

11.    As an eleventh and separate affirmative defense, Defendant alleges upon information and

belief that Plaintiff has failed to join all necessary and indispensable Parties to this lawsuit.

## TWELFTH AFFIRMATIVE DEFENSE

12.    As a twelfth and separate affirmative defense, Defendant alleges upon information and belief

that Plaintiff is barred from any recovery by the applicable statute of limitations

## THIRTEENTH AFFIRMATIVE DEFENSE

13.    As a thirteenth and separate affirmative defense, Defendant alleges upon information and

belief that the Complaint and each purported cause of action fails to state a cause of action

upon which relief can be granted against this answering Defendant.

## FOURTEENTH AFFIRMATIVE DEFENSE

14.    As a fourteenth and separate affirmative defense, Defendant alleges upon

information and belief that any and all damages sought by Plaintiff in its Complaint, if

awarded, will unjustly enrich Plaintiff and therefore, contravene the principles of equity.

## FIFTEENTH AFFIRMATIVE DEFENSE

15.    As a fifteenth and separate affirmative defense, Defendant alleges upon information and belief that Defendants herein have made payments to Plaintiff for which they have not received credit.

## SIXTEENTH AFFIRMATIVE DEFENSE

16.    As a sixteenth and separate affirmative defense, Defendant alleges upon information and belief that the Complaint, and every claim contained therein, is vague, ambiguous and uncertain.

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.    As an seventeenth and separate affirmative defense, Defendant alleges it presently has insufficient knowledge or information upon which to form a belief as whether each may have additional, yet unstated affirmative defenses, specifically the affirmative defenses contained in Minnesota Rules of Civil Procedure 8.03, and reserves the right to assert additional affirmative defenses in the event discovery or further analysis indicates that additional unknown or unstated affirmative defenses become apparent and are applicable.

WHEREFORE, Defendant prays the Court:

1. For a Judgment in favor of Defendant and against Plaintiff as to all Counts.

2. For an award of costs, disbursements and reasonable attorneys' fees against Plaintiff and in favor of Defendant F.H. Schmidt as may be allowed by law.

3. For such other and further relief as the Court deems just and equitable.

Dated: 3 / 1 / 11                                    BLASCHKO & ASSOCIATES

By: _____
Ronan R. Blaschko, #351337
1551 Livingston Ave., Ste. 103
West Saint Paul, MN 55118
(651) 204-7152
Attorneys for Defendant
F.H. Schmidt, Inc.

## ACKNOWLEDGEMENT

The undersigned acknowledges pursuant to Minn. Stat. Section 549.211 that costs, disbursements and reasonable attorneys' fees may be awarded against the party who asserts this pleading if the pleading is asserted without a food faith basis.

Dated: 3 / 1 / 11                                    BLASCHKO & ASSOCIATES

By: _____
Ronan R. Blaschko, #351337

8

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS (Name and Address, if Pro Se Telephone No.)<br>Douglas W Schmidt<br>5951 23rd Street NE<br>Buffalo MN 55313 | DEFENDANTS (Name and Address)<br>Kleinbank<br>1550 Audubon Road<br>Chaska, MN 55318 |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Ronan R. Blaschko of Blaschko & Assoc Law Firm<br>1551 Livingston Ave, Suite 103<br>Saint Paul, MN 55118   (651) 204-7152 | ATTORNEYS (Firm Name, Address and Telephone No., If Known)<br>Bradley Kletscher of Barna, Guzy & Steffen, LTD.<br>200 Coon Rapids Blvd, 400 Northtown Financial<br>Minneapolis, MN 55433-5894  (763) 780-8500 |
| PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor      □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor      □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Contract and Replevin case filed by Kleinbank in Wright County Court removed to Bankruptcy Court regarding Bankruptcy Stay.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
3 ☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(co                 ntinued next column)

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
1 ☒ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
2 ☒ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Douglas W. Schmidt | BANKRUPTCY CASE NO.<br>BK-11-41376-NCD | |
| DISTRICT IN WHICH CASE IS PENDING<br>Minnesota | DIVISION OFFICE | NAME OF JUDGE<br>Nancy C. Dreher |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF<br>David L. Schmidt | DEFENDANT<br>Kleinbank | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Minnesota | DIVISION OFFICE | NAME OF JUDGE<br>Nancy C. Dreher |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>3/10/11 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Ronan R. Blaschko<br>ID # 351337 | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.